Willard T. BUSKIRK, Plaintiff,

v.

APOLLO METALS, Defendant.

No. CIV. A. 99–216.

United States District Court,
E.D. Pennsylvania.

Sept. 15, 2000.

Thomas More Holland, Philadelphia, PA, for Plaintiff.

Larry J. Rappoport, Wayne, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

This is an employment discrimination case brought by Plaintiff Willard T. Buskirk ("Buskirk") against his employer, Apollo Metals ("Apollo"). In his Complaint, Buskirk alleges that Apollo unlawfully terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–13 (1995) ("the ADA"), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951–63 (1991) ("the PHRA"). In addition to his ADA and PHRA claims, Buskirk also alleges a com-

mon law tortious interference with contractual relations claim arising out of his settlement negotiations with Apollo's workers' compensation carrier, the PMA Insurance Group ("PMA"). Apollo now seeks summary judgment with respect to all of Buskirk's claims.[1]

## BACKGROUND

Taken in the light most favorable to the plaintiff, the facts are as follows. Buskirk began working at Apollo in March 1981. Over the next several years, he held a variety of positions within the company. On February 8, 1996, Buskirk injured his back when he slipped on ice in Apollo's parking lot. At that time, Buskirk was working as a box maker, a position he had held for approximately one year prior to his injury.

Shortly after his accident, Buskirk underwent a medical examination that confirmed that he had strained his back. Although Buskirk was permitted to return to work at Apollo, the treating physician placed restrictions on the amount of weight Buskirk could lift and the duration of time he could perform certain tasks. Buskirk returned to work on February 12, 1996; however, because of his new medical restrictions, he switched from working as a box maker to performing less strenuous jobs such as buff building, sample cutting, and quality inspection. Despite the less strenuous work, Buskirk still experienced pain while working. As time progressed, Buskirk continued to seek medical treatment from several different physicians and chiropractors, each of whom occasionally modified Buskirk's working and lifting restrictions.[2]

Buskirk continued working until June 27, 1996, at which point Dr. Kuhn, and later Dr. Pollack, recommended that Buskirk completely cease working to avoid further aggravating his injury. Following these recommendations, Buskirk stopped working and remained off work through September 1996. On September 30, 1996, Dr. Pollack approved Buskirk to return to work part-time with certain lifting restrictions. In accordance with Dr. Pollack's approval, Buskirk returned to work on October 1, 1996.

Upon returning to work in October, Buskirk was assigned to several "light-duty" jobs, including, as before, buff building and sample cutting. Over the next eight months, Buskirk continued on light duty, progressively increasing his work time over this period. In November 1996, while Buskirk was still working part-time, Drs. Kuhn and Pollack concluded that Buskirk would be permanently unable to return to his original box making position because of his injury. Buskirk continued on light duty through May 1997.

On May 29, 1997, Apollo discharged Buskirk from his job. Apollo stated in its termination letter that it could no longer provide Buskirk with light duty work and that, in view of Buskirk's permanent medical restrictions, it could not accommodate him "within the Box Maker position or any other vacant position." Several days later, Buskirk, through his union steward, filed a

---

1. This Court has jurisdiction over Buskirk's ADA claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Buskirk's other claims pursuant to 29 U.S.C. § 1367.

2. At the outset, we note that Buskirk has been evaluated by numerous people over the last several years. For the sake of clarity, we briefly identify these persons below.
 (1) Dr. Capobianco, M.D.: Doctor who first treated Buskirk after his injury on February 8 and 13, 1996.
 (2) Dr. Vincent Stravino, M.D.: Doctor who treated Buskirk between February and March 1996.
 (3) Dr. Behrman, D.C.: First chiropractor who treated Buskirk in March and April 1996.
 (4) Dr. Mark Kuhns, D.C.: Second chiropractor, with whom Buskirk replaced Dr. Behrman, who first treated Buskirk in April 1996.
 (5) Dr. Barry Pollack, M.D.: Neurosurgeon, with whom Buskirk replaced Dr. Stravino, who first treated Buskirk in the summer of 1996.
 (6) Dr. Dane Wukich, M.D.: Doctor who performed independent medical examinations on Buskirk for PMA.

grievance with Apollo objecting to his termination. On June 10, 1997, Deborah Schnabel, Apollo's Human Resource Manager, responded to Buskirk's grievance by letter, in which she stated that Buskirk no longer would be considered terminated, but rather would be considered "on workers' compensation" as of May 31, 1997, pending further medical examination.

After leaving Apollo in May, Buskirk began collecting workers' compensation. Less than one month later, Drs. Kuhn and Pollack updated his status and reduced his work restrictions. As a result of his improving condition, Buskirk's union representatives presented Apollo with a non-exhaustive list of positions whose responsibilities were within Buskirk's current capabilities. Apollo did not place Buskirk in any of these—or any other—positions, contending that no position within Buskirk's capabilities was available at that time.

Buskirk remained out of work from Apollo until February 1999. During this period, in addition to collecting workers' compensation, Buskirk supplemented his income by working as a laborer for his brother's concrete business. He also successfully participated in work strengthening programs, which ultimately led his doctors to approve him for return to work at Apollo in December 1998. In January 1999, Buskirk met with Apollo representatives about his employment status. One month later, Buskirk bid on a pre-polisher position, which he received due to his seniority. Buskirk began working in that capacity on February 22, 1999.

## DISCUSSION

### I. *Legal Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the basis for its motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden pursuant to Fed.R.Civ.P. 56(c), the burden shifts to the non-moving party to go beyond mere pleadings and to demonstrate, through affidavits, depositions or admissions, that a genuine issue exists for trial. *Id.* at 324, 106 S.Ct. 2548. In so doing, the non-moving party must raise "more than a mere scintilla of evidence in its favor" and may not merely rely on unsupported assertions, conclusory allegations, or mere suspicions. *Willmore v. American Atelier, Inc.,* 72 F.Supp.2d 526, 527 (E.D.Pa.1999) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Put simply, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505. When the non-moving party fails to create such disagreement, "[t]he moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### II. *The ADA* [3]

The ADA prohibits discrimination against qualified people with disabilities. To create a prima facie case under the ADA, a plaintiff must "establish that he or she (1) has a disability (2) is a qualified individual and (3) has suffered an adverse employment action because of that disability." *Deane v. Pocono Medical*

---

**3.** The ADA and the PHRA are interpreted coextensively because they deal with similar subjects and serve similar goals. *See Imler v. Hollidaysburg Am. Legion Ambulance Serv.,* 731 A.2d 169, 173 (Pa.Super.Ct.1999). Con-sequently, although we will only discuss the ADA claims, any analysis applies with equal force to the PHRA claims. *See Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996).

*Center*, 142 F.3d 138, 142 (3d Cir.1998) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir.1998)).

### A. *Disability*

Turning to the first element of the prima facie case, Apollo contends that Buskirk is not disabled under the ADA. The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(1999).[4] Buskirk maintains that he is disabled under all three prongs of this definition. We examine his argument with respect to each prong individually.

#### 1. *Substantially limited in a major life activity*

First, Buskirk claims that his injury is a physical impairment that substantially limits him in several major life activities. Neither party disputes that Buskirk's back injury constitutes a physical impairment.[5] To be considered a disability under the ADA, however, an impairment must also "substantially limit" a "major life activity." *Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 674 (E.D.Pa.1996).

Although neither "major life activities," nor "substantially limited" is defined by statute, the relevant regulations provide detailed guidance as to the meaning of these terms. According to the regulations, major life activities include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). In general, they are "those basic activities that the average person in the general populations can perform with little or no difficulty." 29 C.F.R.App. § 1630.2(i) (1999). The regulations go on to state that "substantially limited" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).[6] In the instant case, Buskirk argues that he is substantially limited in several major life activities. We turn to those now.

#### (a) *Lifting*

Buskirk claims that he is substantially limited in lifting. The record indicates that, since his injury on February 8, 1996, Buskirk has had a number of medical restrictions placed on the amount of weight he can lift. These restrictions have varied with the date of examination and the treating doctor.[7]

---

4. "Because the ADA does not define many of the pertinent terms, we are guided by the Regulations issued by the Equal Employment Opportunity Commission ('EEOC') to implement Title I of the Act." *Deane*, 142 F.3d at 143 n. 4 (citing 42 U.S.C. § 12102(2) and 29 C.F.R. § 1630.2).

5. The ADA defines a physical or mental impairment, in part, as: "(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin and endocrine...." 29 C.F.R. § 1630.2(h).

6. The EEOC guidelines also provide that the following factors should be used in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

7. After Buskirk's first examination, Dr. Capobianco restricted Buskirk to lifting 21–50 pounds up to 33–percent of the time. Dr. Capobianco modified that restriction only days later to 10 pounds up to 66–percent of the time and 11–20 pounds up to 33–percent

It is undisputed that lifting is a major life activity. 29 C.F.R.App. § 1630.2(i). However, courts that have addressed whether certain lifting restrictions are substantially limiting have reached varying results. *See, e.g., Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998) (holding that 45 pound lifting restriction not substantially limiting), *cert. denied,* 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999); *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (holding that 25 pound lifting restriction not substantially limiting); *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1174 (10th Cir.1996) (finding that issue of fact exists whether 15 pound limitation is substantially limiting); *Ray v. Glidden Co.,* 85 F.3d 227, 229 (5th Cir.1996) (holding that 25 pound lifting restriction not substantially limiting); *Sicoli v. Nabisco Biscuit Company,* Civ. A. No. 96–6053, 1998 WL 297639, 1998 U.S. Dist. LEXIS 8429, *10– *14 (E.D. Pa. June 8, 1998) (finding that issue of fact exists regarding whether lifting restriction of 32 pounds occasionally and 12 pounds frequently is substantially limiting).

Fortuitously, the Third Circuit recently clarified this precise issue. In *Marinelli v. City of Erie,* 216 F.3d 354 (3d Cir.2000), the defendant appealed the district court's denial of its motion for judgment as a matter of law. The key issue on appeal was whether the plaintiff was "disabled" under the ADA. In support of his claim, the plaintiff argued that he was substantially limited in the major life activity of lifting because he had a ten pound lifting restriction. After surveying holdings in other circuits, the Third Circuit rejected the plaintiff's argument and held that his ten pound lifting restriction "does not render him sufficiently different from the general population such that he is substantially limited in his ability to lift." *Id.* at 364 (remanding with direction to enter judgment as a matter of law for defendant).

■ In the instant case, it is undisputed that Buskirk has a permanent lifting restriction of 40 pounds. Although Buskirk did have somewhat more stringent lifting restrictions placed on him at various times, none of these restrictions was of such duration or long-term impact that it could be reasonably considered "substantially limiting." *See* 29 C.F.R. § 1630.2(j). More significantly, at no relevant time did any of Buskirk's many doctors ever impose a lifting restriction of less than 10 pounds. Under the prevailing view of this Circuit, such restrictions do not, as a matter of law, constitute substantial limitations in the major life activity of lifting. *See Marinelli,* 216 F.3d at 364.

(b) *Walking, bending, athletics, et al.*

■ Buskirk also sets forth a litany of other alleged major life activities in which he claims to be substantially limited.[8] Initially, we reject Buskirk's argument with

---

of the time. For the next several months leading up to Buskirk's authorized excusal from work on June 27, 1996, Drs. Stravino, Behrman, and Kuhn set lifting restrictions on Buskirk varying from 10 to 35 pounds. Following Buskirk's excusal from work between June 27 and September 30, 1996, Buskirk was approved for work by Dr. Pollack with a 10 pound lifting restriction. In June 1997, Drs. Pollack and Kuhn reduced Buskirk's restrictions to lifting 20 pounds frequently and 30 pounds occasionally.

In September 1997, Buskirk began work hardening and work strengthening programs to rehabilitate his back. One month later, a functional capacity test indicated that Buskirk was capable of lifting 50 pounds occasionally. On March 2, 1998, an independent examination by Dr. Wukich concluded that Buskirk was able to work full-time with a 50 pound lifting restriction. On March 3, 1998, however, Dr. Pollack indicated that, although Buskirk was improving, he was *not* able to work full-time yet. Finally, on December 12, 1998, Dr. Pollack approved Buskirk's return to work with a permanent 40 pound lifting restriction.

8. The activities include: sleeping, walking, bending, engaging in athletic activities, sitting for long periods of time, standing for long periods of time, pushing, driving, performing household chores, and engaging in sexual relations. *See* Pltf. Resp. at 11.

respect to engaging in various athletics, driving, and performing household chores because these activities are not major life activities. *See id.* at 362–63 (finding that scrubbing floors, washing walls and other chores that are not "necessary for one to live in a healthy or sanitary environment" do not qualify as major life activities) (citations omitted); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 643 (2d Cir. 1998) (holding that working on cars, golfing, skiing, and driving do not qualify as major life activities), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1252, 143 L.Ed.2d 350 (1999); *see also Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999) (holding that shoveling snow, gardening, and mowing the lawn do not qualify as major life activities), *cert. denied,* —— U.S. ——, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000).

■ Buskirk's claims with respect to sleeping and engaging in sexual relations also must fail. Although we assume without deciding that these are major life activities, Buskirk has failed to produce any genuine issue of material fact that he is substantially limited in these activities. No suggestion is made in any medical report issued over a nearly three-year period following his injury that Buskirk is limited—much less substantially limited—in sleeping or engaging in sexual relations. The only references to either issue appear in Buskirk's deposition and his wife's affidavit wherein they state that Buskirk's sexual performance has changed. No further elaboration or medical documentation is offered. Such bare statements without any corresponding factual support do not create a genuine issue of fact. *See* Fed. R.Civ.P. 56(c),(e).[9]

■ Similarly, Buskirk's argument with respect to standing and walking must fail. Once again, although walking and standing are major life activities, Buskirk has not raised a genuine issue of material fact that he is substantially limited in these activities. With respect to standing, Buskirk alludes to experiencing some pain after prolonged standing. In addition, his doctors placed some limitations on the amount of time that Buskirk could stand, the most restrictive being Dr. Wukich's July 15, 1996 limitation of one to three hours of continuous standing. Even this most stringent restriction, however, does not rise to the level of substantially limiting Buskirk's ability to stand. *See Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 183 (3d Cir.1999) (holding that cashier who could only stand for 50 minutes without rest was no different than average person with respect to standing and, therefore, was not disabled under ADA).[10]

■ Likewise, with respect to walking, Buskirk has made no argument concerning his walking limitations or pointed to any evidence in the record. This Court's own review of the record reveals that Buskirk had at best moderate restrictions placed on his walking[11] and that no other evidence supports the view that Buskirk was limited in his walking. Such moderate walking restrictions do not present a genuine issue of material fact. *See Kelly,* 94 F.3d at 103–04 (affirming summary judgment and noting that "comparatively moderate restrictions on the ability to walk are not disabilities"); *Penchishen,* 932 F.Supp. at 674 (holding that person who could not walk at full pace and had to use both feet to walk up stairs was not disabled).

**9.** Furthermore, Buskirk makes no representation whatsoever that his alleged malady has had such "permanent or long term impact" to constitute a disability under the ADA. *See* 29 C.F.R. § 1630.2(j)(2).

**10.** Moreover, even if this single restriction were more severe, it was at most temporary and, therefore, not of such duration or permanence to be considered a disability under the ADA. *See* 29 C.F.R. § 1630.2(j)

**11.** On February 26, 1996, Dr. Capobianco limited Buskirk to 4 hours of continuous walking. On July 15, 1996, Dr. Dane Wukich limited Buskirk to 1 to 3 hours of walking. Dr. Wukich's second examination of Buskirk, on March 2, 1998, affirmatively removed all walking restrictions. No other report appears to have addressed walking restrictions.

■ Finally, Buskirk's claims with respect to bending, sitting, and pushing must fail. Buskirk neither makes a specific argument, nor cites to pertinent portions of the record to support his general claim. The record reveals that, although some moderate medical restrictions had been occasionally placed on Buskirk following his injury,[12] none constituted substantial limitations. *See, e.g., Horth v. General Dynamics Land Systems, Inc.,* 960 F.Supp. 873, 878 (M.D.Pa.1997) (holding that plaintiff who could only sit for two hours was not substantially limited); *Testerman v. Chrysler Corp.,* No. CIV. A. 95–240, 1997 WL 820934, at *11 (D.Del. Dec.30, 1997) (holding that plaintiff who could only stoop, squat or twist intermittently was not substantially limited). More importantly, no bending, sitting or pushing restrictions of any kind were imposed at the time of his termination in May 1997.[13] Buskirk's claims are further belied by his own admissions. In his deposition, Buskirk testified that, while he was collecting workers' compensation, he still exercised occasionally and worked for his brother's concrete company performing "pretty heavy work" such as "helping with the forms, carrying buckets of materials, [and] carrying ladders around." Buskirk Dep. at 124. While we do not discount the relative difficulty Buskirk may have had in these activities, no jury could reasonably find that Buskirk's limitations constitute the "extremely limiting disabilities ... [that] qualify for protected status under the ADA." *Marinelli,* 216 F.3d at 362.

### (c) *Working*

■ Finally, Buskirk claims that he is substantially limited in working. When analyzing this type of claim, a court must determine if the plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Furthermore, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*[14]

Buskirk fails to put forward any argument regarding his alleged substantial limitation in working. Notwithstanding Buskirk's failure, we review this issue.[15] After

12. On February 26, 1996, Dr. Stravino restricted Buskirk to bending "occasionally" and pushing/pulling up to 75 pounds. On July 15, 1996, Dr. Wukich restricted Buskirk's bending completely and his pushing/pulling to 1–3 hours. Dr. Wukich's second examination of Buskirk, on March 2, 1998, reduced these restrictions to 3–5 hours for pushing/pulling and 1–3 hours for bending. No other report appears to have addressed these type of restrictions.

13. The examination closest in time to Buskirk's May 29, 1997 discharge was Dr. Pollack's June 27, 1997 examination, which reduced Buskirk's lifting restrictions but made no reference to any present or past restrictions on bending, sitting, or pushing.

14. The EEOC guidelines advise that the following factors may also be considered in determining whether an individual is substantially limited in the major life activity of working:
(A) the geographic area to which the individual has reasonable access; (B) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographic area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (C) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).
29 C.F.R. § 1630.2(j)(3)(ii).

15. In his Response, despite raising "working" as a basis for his claim, Buskirk chose not to make any substantive argument. Instead, Buskirk maintained that such argument was unnecessary because he had made a sufficient showing with regard to other major life activities. Buskirk correctly notes that this court need not examine whether an individual is substantially limited in working if the court first finds that he is substantially limited in some other major life activity. *See* 29 C.F.R.App. § 1630.2(j). As we explained *supra,* however, Buskirk is not substantially limited with regard to any other major life

reviewing the record, we hold that no genuine issue of material fact exists with regard to whether Buskirk is substantially limited in the major life activity of working. Although Buskirk is no longer able to work as a box maker, nothing in the record suggests that Buskirk is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs." *See* 29 C.F.R. § 1630.2(j)(2). To the contrary, Buskirk is currently working without accommodation at Apollo in another job. In addition, Buskirk worked as a laborer for his brother's concrete business when he was out on workers' compensation from Apollo. Finally, Buskirk's 40 pound permanent lifting restriction does not restrict him from any class of jobs, even those that may involve some heavy lifting. *See Howell v. Sam's Club # 8160/Wal-Mart*, 959 F.Supp. 260, 266 n. 10 (E.D.Pa. 1997) ("Even a medically documented, moderate lifting restriction is not sufficient to withstand summary judgment if the employee cannot demonstrate how the lifting restriction substantially limits his or her ability to engage in the major life activity of working."), *aff'd*, 141 F.3d 1153 (3d Cir. 1998).

In sum, Buskirk has failed to meet his burden that he is substantially limited in a major life activity. Accordingly, we will grant Apollo's Motion with respect to claims premised on "actual disability."

### 2. Record of Impairment

Next, we must consider whether Buskirk is disabled by virtue of a record of an impairment. *See* 42 U.S.C. § 12102(2)(B). To meet this definition, an individual must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity. 29 C.F.R. § 1630.2(k).[16]

Buskirk fails to produce any evidence that he has a record of an impairment that substantially limits a major life activity. It is undisputed that Buskirk suffered a back injury in February 1996, a result of which he was somewhat restricted in performing a variety of tasks. It is further undisputed that Apollo accommodated Buskirk by placing him in less strenuous positions for several months. Finally, the record clearly shows that as of November 1996, Buskirk's doctors determined he would not be able to return to his original box maker position. However, contrary to Buskirk's assertion, these facts do not establish that Buskirk has a record of impairment. As we explained *supra*, in no instance did Buskirk's impairments substantially limit him in any major life activity. If an impairment does not substantially limit a major life activity, a history of those same impairments cannot constitute a record of impairment. *See Colwell*, 158 F.3d at 645; *Palmisano v. Electrolux, LLC,*, No. CIV. A. 99–429, 2000 WL 1100785, at *4 (Aug. 7, 2000 E.D.Pa.). Moreover, this conclusion is not changed by Buskirk's medical disqualification from his former position as a box maker, *see* 29 C.F.R. § 1630.2(j)(3)(i), or by Apollo's earlier accommodation of Buskirk with light duty, *see Gutridge*, 153 F.3d at 901–02 (holding that record of impairment not established during period of recovery and treatment following a work injury because this type of impairment is not a permanent disability); *Panzullo v. Modell's Pa., Inc.*, 968 F.Supp. 1022, 1024 (E.D.Pa.1997) (finding that light-duty work limitation is not per se disability under ADA).

Accordingly, we will grant Apollo's Motion with respect to claims premised on a "record of impairment."

---

activity. Therefore, out of an abundance of caution, we will examine whether Buskirk could be reasonably considered to be substantially limited in working.

**16.** The EEOC guidelines further state: "This part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R.App. § 1630.2(k).

### 3. *Regarded as Disabled*

Finally, Buskirk claims that he is within the ADA's definition of disabled because Apollo regarded or perceived him as disabled. *See* 42 U.S.C. § 12102(2)(C). A person is regarded as having a disability if the person:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*). Although Buskirk does not explicitly state so, his argument is grounded on the first definition above, that is, that he has an impairment that is not substantially limiting, but that Apollo treated his impairment as if it were so limiting. Specifically, Buskirk claims that Apollo's decision to discharge him was the result of its "mistaken belief that Buskirk's continued service in the light duty capacity would aggravate his condition." Pltf. Resp. at 14. Buskirk further alleges that Apollo's misperception resulted in it failing to consider him for other available positions within his capabilities.

Apollo counters Buskirk's claim by contending that it was well aware of Buskirk's injury and that no misperception ever existed. Apollo maintains that it discharged Buskirk in May 1997, not because of any misunderstanding of Buskirk's condition, but rather because it "could not provide [Buskirk with] light duty indefinitely." Def. Reply at 7. In addition, Apollo argues that no positions within Buskirk's capabilities were available prior to the pre-polisher position he received in February 1999.

 Initially, we recognize that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regard-ed the employee as disabled." *Kelly,* 94 F.3d at 109. Furthermore, an employer's decision to accommodate an employee with light duty work does not establish a "regarded as" claim under the ADA. *See Pathmark,* 177 F.3d at 190; *Nave v. Wooldridge Construction, Inc.,* Civ. A. No. 96–2891, 1997 WL 379174, 1997 U.S. Dist. LEXIS 9203 at *29. In the instant case, it is undisputed that Buskirk worked in a light duty position for several months prior to his discharge. The relevant time period for our focus, however, is from the time of Buskirk's discharge in May 1997 onward. Buskirk and Apollo offer conflicting explanations for why Buskirk was discharged in May 1997 and why he was not reassigned to other allegedly available positions after his condition improved. In addition, some dispute exists over when certain positions became available, whether Apollo gave Buskirk notice of their availability, and, if so, whether Buskirk made his interest known.

Buskirk points us to several portions of the record to support his claim. First, Buskirk notes the deposition testimony of William Federach, Apollo's Vice President for Manufacturing, which suggests that Buskirk was discharged because Apollo believed he could not perform any job at Apollo. Next, Buskirk cites his May 29, 1997 discharge letter, which states that "[Apollo] cannot accommodate you within the Box Maker position or any other vacant position and [has] no position that meets your limited physical capabilities . . .," as evidence that Apollo regarded him as disabled under the ADA. In addition, Buskirk offers various job postings and correspondence from Apollo that allegedly show that there were available positions within his capabilities and that Apollo failed to consider him for these positions because it mistakenly believed Buskirk was disabled.

Viewing all these facts in the light most favorable to Buskirk, we find that a jury could reasonably conclude that Apollo erroneously regarded Buskirk as disabled

under the ADA. *See Pathmark,* 177 F.3d at 188 (finding drug store's statements that employee was unable to perform any job at store supported conclusion that drug store perceived employee as disabled and sufficed to make out a "regarded as" claim). Accordingly, we will deny Apollo's Motion with respect to claims premised on a "regarded as" disability.

### D. *Qualified Individual*

Having found that factual disputes exist over whether Buskirk is disabled under the ADA, we must now examine the second element of the prima facie case: whether Buskirk is a "qualified individual." The ADA defines a qualified individual as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The applicable regulations divide this inquiry into two prongs: (1) whether the individual has the requisite skill, experience, education and other job requirements of the position and (2) whether the individual, with or without reasonable accommodation can perform the essential functions of the position. *See* 29 C.F.R.App. § 1630.2(m). Here, neither party disputes that Buskirk had the qualifications for the various positions at Apollo. As a result, we focus our attention on the second step of the "qualified individual" analysis.

Determining whether an individual, with or without reasonable accommodation, can perform the essential functions of a positions is also a two-step process. First, a court examines whether the individual can perform the essential functions of the job without accommodation. *See Deane,* 142 F.3d at 146. In the instant case, this determination is made easy as neither party disputes that Buskirk is not able to perform the functions of his former position as box maker.

The second determination to be made is whether the individual can perform the essential functions of the job with a reasonable accommodation. If so, the individual is qualified; if not, the individual has failed to make out this element of the prima facie case. *See id.* Buskirk argues that Apollo failed to reasonably accommodate him by failing to consider him for several jobs within his capabilities and failing to give him notice of similar jobs as they became available.

The ADA provides that "reasonable accommodations" may include "job restructuring, part-time or modified work schedules, [and] reassignment to vacant positions...." 42 U.S.C. § 12111(9). In addition, a reasonable accommodation may include: "modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such applicant desires...." 29 C.F.R. § 1630.2(*o*)(i). However, an individual's right to a reasonable accommodation is limited. For example, an employer need not provide an accommodation if it would place an "undue hardship" on the employer. *See* 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(p) (listing factors to be considered in determining whether accommodation is an "undue hardship").

In the instant case, the parties dispute whether alternative positions were available at Apollo and whether Buskirk was able to perform the essential functions of those positions. Buskirk contends that, at least as of his June 27, 1997 examination, he was able to fulfill the duties of various then-available positions at Apollo. Apollo counters that it properly relied on doctors' reports that, in Apollo's view, established that Buskirk was not able to fulfill those positions' duties. Apollo further maintains that, regardless of Buskirk's medical status, no positions within his capabilities and for which he was eligible were available prior to the position he took in February 1999.

The Court observes that Buskirk's many medical reports, and their accompanying restrictions, were not always consistent and may have understandably led to confusion. We further observe that both parties may have contributed to the confusion

by less than regular and open communication.[17] However, apportioning the proper blame, if any, for these matters is a job best left for the fact-finder. We find that Buskirk has raised genuine issues of fact as to whether he could have worked in several positions at Apollo with reasonable accommodation. As such, a jury could reasonably conclude that he is a qualified individual under the ADA. Accordingly, we will deny Apollo's Motion on this issue.

### E. Adverse Employment Action

Finally, we find that Buskirk has established the third prong of his prima facie case. It is uncontested that Buskirk was discharged from Apollo in May 1997 and remained off work from Apollo until February 1999. These issues suffice to allow Buskirk to survive summary judgment with respect to whether he suffered an adverse employment action.[18]

### III. Tortious Interference

■ Defendant also seeks summary judgment on Buskirk's tortious interference with contractual relations claim. To prevail on a claim from intentional interference with contractual relations, a plaintiff must prove:

(1) the existence of a contractual, or prospective contractual relations between itself and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring;

(3) the absence of a privilege or justification on the part of the defendant;

(4) the occasioning of actual legal damage as a result of the defendants' conduct; and

(5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant.

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* 140 F.3d 494, 530 (3d Cir.1998) (citing *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987)).

■ In its motion for summary judgment, Apollo only takes issue with the third element, arguing that it had a privilege to object to any settlement agreement between the insurance carrier and Buskirk. In making this argument, Apollo relies on the Restatement (Second) Torts § 769, which states that:

one who, having a financial interest in the business of a third person[,] intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other person's relation if he (a) does not employ wrongful means and (b) acts to protect his interest from being prejudiced by the relation.

*Id.* Apollo maintains that its particular privilege exists by virtue of its financial interest in the business of its workers' compensation carrier, PMA Insurance Group. Specifically, Apollo claims that a

---

17. The ADA's regulations state:
To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.
29 C.F.R. § 1630.2(*o*)(3). Indeed, the very nature of the process requires both parties "to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville School District,* 184 F.3d 296, 312 (3d Cir.1999). Both Buskirk and Apollo dispute whether

certain communications between them are properly characterized as the interactive process and, if so, if such process was sufficient. Given the factual issues necessarily involved in making this determination, and the clear disagreement among the parties, we leave this issue for the jury.

18. We recognize that, if Buskirk ultimately prevails, this case may present the troublesome question of whether a "regarded as" plaintiff is entitled to accommodation even though he is not actually disabled. While this court recognizes the difficulty inherent to that question, *see, e.g., Pathmark,* 177 F.3d at 195–96, we need not resolve it at the summary judgment stage.

settlement between Buskirk and PMA would result in Apollo either being held responsible to pay the settlement or being subject to higher insurance premiums in the future.

We recognize that Pennsylvania courts have adopted the reasoning of § 769 of the Restatement. *See Schulman v. J.P. Morgan*, 35 F.3d 799 (3d Cir.1994) (noting approval of § 769 by various Pennsylvania state courts). However, notwithstanding the applicability of the privilege under Pennsylvania law, Apollo has failed to cite to any evidence in the record that supports the finding of an underlying financial interest upon which its alleged privilege is based. Instead, Apollo simply states that it might have incurred higher insurance premiums in the future or might have been held responsible for the actual settlement. Such statements, unadorned by any factual support in the record, do not suffice to meet Apollo's burden as the moving party. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Accordingly, we will deny Apollo's Motion with respect to this claim.

## CONCLUSION

For the foregoing reasons, Apollo's Motion for Summary Judgment will be granted in part and denied in part. Defendant's Motion will be granted on Counts I–V insofar as they are premised on actual disability or record of impairment. Defendant's Motion will be denied on Counts I–V insofar as they are premised on regarded as disability. Defendant's Motion will be denied on Count VI. An appropriate order follows.

## *ORDER*

AND NOW, this _____ day of September, 2000, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's responses thereto, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part.

Defendant's Motion is GRANTED on Counts I–V insofar as they are premised on 42 U.S.C. § 12102(2)(A) ("actual disability") or 42 U.S.C. § 12102(2)(B) ("record of impairment"). Defendant's Motion is DENIED on Counts I–V insofar as they are premised on 42 U.S.C. § 12102(2)(C) ("regarded as"). Defendant's Motion is DENIED on Count VI.