Jamie **FRITZ**, Plaintiff,

v.

**WAL–MART STORES, INC.,** a Delaware Corporation, Defendant.

No. 4:00CV309.

United States District Court, D. Nebraska.

March 29, 2001.

**992**

James B. McVay, Swanson, McVay Law Firm, Omaha, NE, for plaintiff.

Christopher R. Hedican, Baird, Holm Law Firm, Omaha, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

This matter is before the court upon Defendant's motion for summary judgment (filing 17). Fritz claims that her job with Wal–Mart was terminated because she is disabled, in violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213 (the "ADA") and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb.Rev.Stat. Ann. §§ 48–1101 to 48–1126 (Lexis 1995). Upon consideration of the briefs of the parties and the Index of Evidence (filing 18), I find that the motion should be granted because Fritz is not an individual with a disability within the meaning of the ADA and, alternatively, that even if Fritz is an individual with a disability, she was not a "qualified" individual with a disability because she could not perform the essential job function of standing.[1]

## I. BACKGROUND

The following facts are undisputed. Fritz was employed by Wal–Mart at its Fremont, Nebraska store for 12 days, beginning in mid-January 1998 and ending February 12, 1998. (Ex. 3.) Fritz initially applied for a cashier position, which required frequent lifting of up to 50 pounds. Fritz has degenerative disk disease, spinal fusion, and an artificial disc, which the parties refer to as her "Back Condition."

---

1. Fritz also asserts a third cause of action, that Wal–Mart failed to provide her with reasonable accommodations to perform the essential functions of the jewelry clerk position in violation of the ADA. Complaint ¶ 21. Because reasonable accommodation is required only when the individual is "an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A), and I find that Fritz neither has a disability nor is qualified, summary judgment will also be granted on the "reasonable accommodation" claim.

(Complaint ¶ 8; Ex. A at 33:24–34:9, 93:15–94:3).[2] (I will also refer to this combination of disorders as her "Back Condition.") Fritz's Back Condition precludes her from performing the lifting required of a cashier. (Ex. 6; Ex. A at 124:2–128:6). The trainer for Wal–Mart in Fremont, Rose Haecke, received Fritz's application for the cashier position and suggested that Fritz apply for the jewelry sales clerk position, as it did not require as much lifting as the cashier position. (Ex. A at 128:22–129:20.) Fritz applied and was hired for the jewelry sales clerk position, and signed a document captioned "Wal–Mart Stores Matrix of Essential Job Functions: Jewelry, Shoes & Food Service." (Ex. 7.) This matrix stated that it "is intended solely to advise applicants of essential job functions as defined by the Americans with Disabilities Act (ADA) and should not be construed as all-inclusive." (Ex. 7.) The job functions listed as essential for jewelry sales clerks on the Matrix included customer assistance, stocking merchandise and setting displays, packing merchandise, "zone defense" (defined on the reverse side of the form as "straighten merchandise and clean the merchandise area to make it more attractive for customers. Maintaining a clean work area."), occasional light lifting (lifting 20 lbs. maximum with frequent lifting or carrying of objects weighing up to 10 lbs.), bending, twisting, squatting, and standing or walking while performing the work. (Ex. 7.)

Fritz understood that the Matrix of Essential Job Functions "show[ed] what you needed to do in order to do that job." (Ex. A at 139:15–16.) Fritz signed the Matrix, indicating "Yes, I have the ability to perform all of the functions highlighted above." (She did not choose the option "Yes, I can perform all of the functions highlighted above with an accommodation." (Ex. 7.).) In her deposition, she was asked why she indicated she could perform the job without accommodation when the Matrix indicated that the job would require her to stand or walk continuously while she was on the job. She replied "I assumed I could stand and walk. I didn't—I didn't know what would happen. I hadn't worked in the situation like this before. I assumed I could do that." (Ex. A at 141:19–22.)

While on the job, Fritz sat down to replace a watch battery to reduce the strain on her back which resulted from bending over the counter. (Ex. A at 175:19–176:7.) She was told by her supervisor, Tina Rios, that if she wanted to sit down to change a watch battery she needed a doctor's note. (Ex. A at. 175:19–21.) Dr. White had been treating Fritz for 20 years, so Fritz contacted his office to get a doctor's note. She told a nurse in Dr. White's office that she needed a doctor's note to document her need to sit while changing a watch battery. On February 6, 1998, Fritz picked up the note from Dr. White's office without discussing its contents with Dr. White or the nurse. That February 6 note stated: "Fritz, Jamie has been under my care from 02–06–98 to 02–06–98 and is able to return to work 02–06–98 With Restriction. Remarks: Has a spinal fusion and is unable to bend & needs to sit on and off during her shift." Fritz submitted this February 6 note to her supervisor at Wal–Mart. (Ex. 15; Ex. A at 176:14–177:15.)

Wal–Mart advised Fritz that it needed clarification of the restrictions in the February 6 note. Wal–Mart, not Fritz, contacted Dr. White for clarification. On February 10, 1998, Wal–Mart received a

---

**2.** The Complaint is filing 1, and is subsequently referred to as "Complaint." Extracts of Fritz's deposition comprise Exhibit A. All referenced exhibits are located in filing 18, Defendant's Index of Evidence.

second note from Dr. White. This second note stated: "Restrictions for the above-named patient [Jamie Fritz] are as follows: Ms. Fritz needs to be able to sit one-half the time she is at work. She must be able to squat with good body mechanics (no stooping). Try to limit the squatting time to less than two hours out of eight hours." Fritz had no contact with Dr. White or his office between the time she delivered the first note dated February 6 and when she met with Wal–Mart employees after Wal–Mart had received the second note dated February 10. (Ex. 16; Ex. A at 182:23–184:2.)

Fritz contends that Dr. White was over-restricting her, and that she could perform the standing functions of the jewelry clerk position. However, Fritz admits that if the restrictions stated in Dr. White's two notes applied to her, she would not be able to do the jewelry clerk job. (Ex. A at 184:3–21.)

Three Wal–Mart employees met with Fritz after Wal–Mart received the second note from Dr. White. Fritz was advised that the medical restrictions in the notes precluded her from working as a jewelry clerk. Fritz offered to contact her doctor for further clarification and Wal–Mart de-clined. Fritz was told that Wal–Mart would have a greeter position in the Lawn and Garden department when the Garden Center opened in May, and that the greet-er position might accommodate her alleged disability. Fritz was terminated but eligi-ble for rehire. (Ex. A at 185:1–24; Ex. 17.)

Fritz stated that after she was terminat-ed from the jewelry clerk position at Wal–Mart, if she had wanted to immediately find a job paying her at least $5.50 per hour, she could have found one. (Ex. A at 256:2–8.) (She was not paid more than $5.50 per hour by Wal–Mart. (Ex. A at 133:5–16.).) She also stated that she has never had a problem finding work, and

that if she looks for a job she usually finds one within a week. (Ex. A at 91:16–23.)

## II. DISCUSSION

### A. Standard of Review

I apply the following standard of review in ruling upon a motion for summary judg-ment:

> [The record must be examined] in the light most favorable to the nonmovant. Summary judgment is appropriate if the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Because discrimination cases often turn on infer-ences rather than on direct evidence, [courts should be] particularly deferen-tial to the nonmovant. Indeed, [the Eighth Circuit has] stated that "sum-mary judgment should seldom be used in employment-discrimination cases." Notwithstanding these considerations, summary judgment is proper when a plaintiff fails to establish a factual dis-pute on an essential element of her case.

*Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1205 (8th Cir.1997) (internal citations omitted). In passing upon a mo-tion for summary judgment, this court must view the facts in the light most favor-able to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir.1997), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1186, 140 L.Ed.2d 316 (1998). *See also Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891 (8th Cir.1994).

"The ADA proscribes discrimination by an employer 'against a qualified individual with a disability because of the disability of such individual.'" *Snow*, 128 F.3d at 1205 (quoting 42 U.S.C. § 12112(a)). A plaintiff bringing an ADA discrimination suit

> must establish a prima facie case by showing that she (1) was "disabled"

within the meaning of the statute; (2) was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

*Id.* When the facts are viewed in the light most favorable to Fritz, if Fritz has failed to establish a factual dispute as to whether she was "disabled" or was "qualified" to perform the essential functions of the jewelry clerk job, then summary judgment in favor of Wal–Mart is proper. I turn now to consider whether Fritz has established a factual dispute on either of these key elements of her case.

## B. Is Fritz "Disabled" Within the Meaning of the ADA?

To fall within the ADA's definition of disability, "one must have an actual disability ..., have a record of a disability ..., or be regarded as having [a] disability." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 478, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (referencing 42 U.S.C. § 12102(2)(A)-(C)). An "actual disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual...." *Id.* (quoting 42 U.S.C. § 12102(2)(A)).

Fritz argues that her "Back Condition" is an impairment that substantially limits the major life activities of standing, moving, bending, lifting, and working. (Complaint ¶ 8). Defendant has conceded for purposes of the motion for summary judgment that Fritz's "Back Condition" is a physical impairment (Br. in Supp. of Def's. Mot. for Summ. J. at 7), but argues that it does not substantially limit her major life activities. "Whether an impairment sub-

stantially limits a major life activity is a threshold question.... It is not enough that an impairment affect a major life activity; the plaintiff must proffer evidence from which a reasonable interference can be drawn that such activity is substantially or materially limited." *Snow,* 128 F.3d at 1206–07. I will separately consider whether Fritz's Back Condition "substantially limits" her life activities of standing, moving, bending, lifting, or working. I assume for purposes of this motion that these activities constitute major life activities. *Weber v. Strippit, Inc.,* 186 F.3d 907, 912–13 (8th Cir.1999) (major life activities include walking, sitting, standing, lifting, and working).[3]

I apply these standards in determining whether any of Fritz's major life activities are substantially limited. An impairment "substantially limits" a major life activity if it

> render[s] an individual unable to perform a basic function that the average person in the general population can perform, or ... significantly restrict[s] the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population.... The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its long-term impact.

*Snow,* 128 F.3d at 1206–07 (citing 29 C.F.R. pt. 1630, App. § 1630.2(j)).

### 1. Standing

Notes from Fritz's doctor indicate that she must sit half the time she is at work.

---

**3.** Although the Supreme Court has indicated that there may be "some conceptual difficulty in defining 'major life activities' to include working," *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139, the parties both accept that working is a major life activity, and accordingly I do not decide whether "working" is a "major life activity."

(Ex. 6 & 7.) Fritz asserts that this is too restrictive, and that her only standing limitations are that she cannot stand for long periods of time and has some tingling and numbness in her legs when she does. Fritz explained that when she stated that she cannot stand for long periods of time she meant that she cannot stand for more than four or five hours at a time without taking a 15–20 minute break. Fritz asserts that after taking a 15–20 minute break she would be able to stand for a couple more hours. When she stands for too long she experiences tingling, numbness, and a possibility that her legs might buckle. (Ex. A at 95:1–96:14.)

As this is a motion for summary judgment, I must consider the facts in the light most favorable to Fritz. For purposes of determining whether Fritz's Back Condition substantially limits the major life activity of standing, it is more favorable to Fritz to accept her doctor's standing restrictions than Fritz's own less restrictive assessment. Thus I adopt the doctor's view that Fritz must sit half the time she is at work.

The Eighth Circuit has included standing in lists of major life activities, *Weber v. Strippit, Inc.,* 186 F.3d 907 (8th Cir.1999), but has not addressed the issue of standing restrictions. Cases from other jurisdictions indicate that Fritz's limitation is not a substantial limitation on standing. *Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 183 (3d Cir.1999) (cashier who could only stand for 50 minutes without rest was no different than an average person with respect to standing and was not "disabled"); *Buskirk v. Apollo Metals,* 116 F.Supp.2d 591, 598 (E.D.Pa.2000) (a plaintiff who experienced pain after prolonged standing and was unable to stand for more than one to three hours continuously was not substantially limited in the major life activity of standing); *Williamson v. Hartmann Luggage Co.,* 34 F.Supp.2d 1056, 1062 (M.D.Tenn.1998) (a limitation on a plaintiff's "ability to stand or walk more than half of the workday does not in and of itself translate to a substantial limitation on the major life activities of walking and/or standing....").

▬ Fritz has the burden of presenting evidence that her Back Condition caused her to be substantially limited in the major life activity of standing. *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996) (summary judgment for employer appropriate where plaintiff "failed to present sufficient evidence to establish that the nature, duration, and long-term impact of his medical problems caused him to be substantially limited in a major life activity...."). Introducing evidence that she must sit half the time she is at work and that if she stands too long she experiences tingling, numbness, and a possibility that her legs might buckle does not meet this burden. Fritz is not "substantially limited" in standing.

#### 2. Bending

At times Fritz alleges that she is substantially limited in both bending and moving. *See, e.g.,* Complaint ¶ 8. However, in her deposition Fritz stated that the only way her Back Condition impaired her ability to move was by creating a limitation in her ability to bend. (Ex. A at 105:1–25.) Fritz can bend somewhat forward but cannot touch her toes. (Ex. A at 108:2–15.) By using adaptive measures, Fritz is able to do everything she was able to do before when she had full bending abilities. (Ex. A at 109:1–17.) Plaintiff's brief cites no evidence in support of the assertion that Fritz "is unable to carry out normal activities because of this [bending] impairment." (Pl.'s Br. in Opp. to Mot. for Summ. J.) Fritz also stated that she could have obtained a job within a week after she was

terminated from Wal–Mart if she had looked for one and that she had in the past always found a job within a week from the time she sought one. (Ex. A at 256:2–8, 133:5–16, 91:16–23.) Fritz has failed to produce any evidence that her bending limitation imposes any limitations on her other than her ability to fully bend.

█ Other jurisdictions have held that individuals are not substantially limited in the major life activity of bending when those individuals continue to be capable of carrying out normal activities so long as they do not exert themselves. *Szalay v. Yellow Freight System, Inc.*, 998 F.Supp. 799, 803 (N.D.Ohio 1996). Moderate bending restrictions have been found insufficient to prove that an individual is substantially limited in the major life activity of bending. *Buskirk v. Apollo Metals*, 116 F.Supp.2d 591, 599 (E.D.Pa.2000). Fritz has not produced evidence to create an issue of fact as to whether her bending limitation is a substantial limitation on a major life activity.

### 3. Lifting

Fritz alleges that she is substantially limited in her ability to lift. Complaint ¶ 8. She claims inability to lift more than 20 pounds and the need to be level with the item when she is lifting. (Ex. A at 109:18–110:11.) Fritz stated that she has been able to make adjustments to lift her daughter, and that she is able to lift anything she wants to lift. (Ex. A at 112:11–20.)

█ The Eighth Circuit has held that a restriction on lifting 10 pounds frequently and 20 pounds occasionally did not substantially limit a major life activity and that a person with such a restriction was not "disabled." *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 617 (8th Cir. 1997). Fritz's 20 pound, at waist height, restriction is less limiting than that in *Helfter* and is insufficient as a matter of

law to show that she is substantially limited in a major life activity.

### 4. Working

Fritz also asserts that she is substantially limited in the major life activity of working. In a sense, this is a way of asserting that even if none of her other limitations (standing, lifting or bending) constitutes a substantial limitation on a major life activity when considered in isolation, those limitations do constitute a substantial limitation on a major life activity when considered collectively. The EEOC suggests that the major life activity of working be considered only when the individual is not substantially limited in any other major life activity. 29 C.F.R. pt. 1630, App. § 1630.2(j). I have already found that Fritz is not substantially limited in any other major life activity and will proceed to a consideration of whether there is a substantial limitation on working.

█ Plaintiff's brief cites *Webb v. Garelick Manufacturing Co.*, 94 F.3d 484 (8th Cir.1996) in support of her argument that her Back Condition substantially limits the major life activity of working. Plaintiff misapprehends *Webb. Webb* does stand for the general proposition that a plaintiff is not required to prove that her impairment restricts her ability to perform all jobs, but rather is only required to prove that her impairment significantly restricts performance of a " 'class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.' " *Id.* at 487 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). However, the Eighth Circuit expanded on this general proposition to explain the manner in which a district court should make an individualized inquiry as to whether a plaintiff is significantly restricted in his or her ability to work because of an inability

to perform a relevant class or range of jobs. Adoption of the individualized inquiry required by *Webb* results in a finding that Fritz is not substantially limited in working.

The district court in *Webb* found that the plaintiff's impairment only precluded him from occupations involving handwriting and other repetitive hand motions; suggesting that the relevant inquiry was whether plaintiff was unable to perform any job. The Eighth Circuit reversed and remanded, finding that the district court should have undertaken an "individualized assessment of the extent to which [the plaintiff's] hand condition limited his meaningful opportunities for employment." *Id.* at 488. The district court should have considered the job from which the plaintiff was fired and the specialized administrative, supervisory, and management skills the plaintiff had developed in 24 years with the employer in determining the class of jobs that was relevant for its disability analysis. After establishing the relevant class of jobs, the district court should have considered whether the plaintiff was "significantly restricted in his ability to perform that class of jobs as compared to the average person with his supervision and production development skills." *Id.*

Using the *Webb* format, I consider the expertise and background needed to perform the jewelry clerk position from which Fritz was terminated and whether Fritz's Back Condition prevents her from performing a class or range of jobs requiring similar expertise and background. In this regard, it is important to note that the question is "whether the particular impairment constitutes for the particular person a significant barrier to employment," *Webb*, 94 F.3d at 488 (internal quotation omitted), and not whether Fritz is unable to perform a single, particular job (which does not constitute a substantial limitation

in the major life activity of working), 29 C.F.R. § 1630.2(j)(3)(i).

The jewelry clerk position paid less than $5.50 per hour. There is no evidence that it required any specialized skills or background, or that Fritz had any specialized skills or background. Wal–Mart offered Fritz a greeter position in the lawn and garden department when it opened in the spring, an indication that Fritz was not precluded even from other retail jobs at Wal–Mart. Fritz said that if she had looked for a job after she left Wal–Mart, she could have found one paying her at least $5.50 per hour, that she has never had a problem finding work and usually finds one within a week. (Ex. A at 256:2–8, 133:5–16, 91:16–23.) The Eighth Circuit has indicated that when a plaintiff is able to obtain a new job two weeks after her termination, any impairment in "working" is only of limited duration and plaintiff cannot make the necessary showing that she was unable to perform either a class of jobs or a broad range of jobs. *Heintzelman v. Runyon*, 120 F.3d 143 (8th Cir. 1997).

Under the circumstances, Fritz's Back Condition merely prevents her from performing entry level, low-paying retail jobs that require standing. She is not substantially limited in her ability to perform a class or range of jobs requiring any particular expertise or background. Fritz has failed to establish a question of fact as to whether she is substantially limited in the major life activity of working.

## C. Is Fritz Qualified to Perform the Essential Functions of the Job?

Even if Fritz's Back Condition imposes a substantial limitation in a major life activity, Fritz must show that she is qualified to perform the essential functions of the Wal–Mart jewelry clerk job. If she cannot, she is not a qualified individual with a

disability and is not entitled to ADA protection. *Snow*, 128 F.3d at 1205. Thus, I consider whether Fritz is qualified to perform the essential job functions.

First I consider whether standing is an essential function of the jewelry clerk position. Wal–Mart lists standing as an essential function in the Matrix of Essential Job Functions. That Matrix explicitly states that it is intended to advise applicants of the essential job functions for purposes of the ADA. (Ex. 7.) Fritz admits that the Matrix accurately reflects the requirements of the jewelry clerk position, that she was required to approach customers when they came within ten feet, and that selling to customers constituted 85% of her job. (Ex. A at 148:3–149:1; 154:9–11; 156:8–16.) She did not work solely behind a jewelry counter and was required to approach customers in the area adjacent to the counter. (Ex. A at 149:2–15.) Other federal courts have held that standing is an essential function of a retail sales position. *See, e.g., Kuehl v. Wal–Mart Stores, Inc.*, 909 F.Supp. 794, 802 (D.Colo.1995). The regulations state that evidence of whether a particular function is essential includes, but is not limited to, the employer's assessment of what functions are essential, written job descriptions prepared before advertising or interviewing for the job, the amount of time spent on the job performing that function, and the work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). All the available evidence of the essential functions of the jewelry clerk job indicate that standing is an essential function.

I turn now to consider whether Fritz could perform the essential standing function of the jewelry clerk job. This is problematic because Fritz's doctor has advised Wal–Mart that she must stand half of the time she works and Fritz has admitted that if that restriction is applicable to her she cannot do the job, yet Fritz asserts

that the restriction is too limiting and that she can do the job by sitting only occasionally.

The parties have not cited any Eighth Circuit cases addressing the question whether a plaintiff is "qualified" for a job when the plaintiff's physician imposes specific limitations, yet the plaintiff expresses willingness to violate those limitations. However, a Seventh Circuit case is instructive. In *Koshinski v. Decatur Foundry*, 177 F.3d 599 (7th Cir.1999), the plaintiff suffered from a degenerative form of arthritis in his wrists and took a medical leave of absence. The plaintiff's doctors recommended that he avoid several activities, all of which were necessary functions of the job. Nevertheless, the plaintiff wanted to return to work, knowing that he would have to do things his doctor recommended that he avoid, that he would exacerbate his condition if he returned to the job, and that he would be in pain. The employer terminated the plaintiff based on the doctors' recommendations. The plaintiff claimed that the failure to reinstate him after the medical leave violated the ADA. The Seventh Circuit ruled that although the plaintiff showed "that he wanted to return to work despite the risk of pain and harm," the plaintiff had to show that he was qualified to do the job and could not show that he was qualified in light of the doctors' recommendations. *Id.* at 603.

█ Wal–Mart is entitled to rely on the restrictions imposed by Fritz's own doctor. *Cf. Wooten v. Farmland Foods*, 58 F.3d 382, (8th Cir.1995) (affirming summary judgment for employer on question of whether terminated employee was regarded by employer as having disability; employer relied on restrictions imposed by employee's physician prohibiting employee from performing certain activities and employer had no available jobs that could

accommodate those restrictions); *Gerdes v. Swift–Eckrich, Inc.*, 125 F.3d 634, (8th Cir.1997) (similar). If I were to rule that Wal–Mart could not rely on the restrictions imposed by Fritz's doctor, and had to accept Fritz's unsupported assertion that she can do the job, there would be a risk that Fritz had overestimated her ability to stand and would incur an injury on the job subjecting Wal–Mart to a workers' compensation claim.

Furthermore, Fritz has the burden of producing evidence to dispute or contradict her own doctor's assessment, and she has produced no facts or other evidence to support her belief that the doctor is wrong. Thus there is no question of fact as to whether Fritz can perform the essential standing function of the jewelry clerk job, and Wal–Mart is entitled to summary judgment as a matter of law. *Ketcher v. Wal–Mart Stores, Inc.*, 122 F.Supp.2d 747, 752–53 (S.D.Texas 2000) (plaintiff's doctor reported to Wal–Mart that plaintiff had restriction that would bar him from performing some of essential functions of job, plaintiff disagreed with doctor's assessment but produced no evidence that he could perform the restricted functions, and court held on motion for summary judgment that plaintiff could not perform the essential functions of the job.)

## D. Does Fritz's State Law Disability Claim Also Fail?

The Complaint asserts supplemental jurisdiction over a pendant state law claim of discrimination in violation of the Nebraska Fair Employment Practice Act ("NFEPA"), Neb.Rev.Stat. Ann. §§ 48–1101 to 48–1126 (Lexis 1995). Complaint ¶¶ 19. There are two possible ways for a plaintiff to bring suit asserting NFEPA claims against a private party: (1) by proceeding solely under a provision in the NFEPA, Neb.Rev.Stat. Ann. § 48–1119(4), or (2) by proceeding under a general state civil rights provision, Neb.Rev.Stat. Ann. § 20–148 (Lexis 1999) to enforce the rights secured by the NFEPA.

■ It is unclear which procedure Plaintiff is using. I assume that Plaintiff is proceeding pursuant to section 48–1119(4), as neither the complaint nor Plaintiff's brief refers to section 20–148. This court has held that section 48–1119(4) permits actions only in state district court and does not allow a plaintiff to pursue a NFEPA claim in federal court solely under the provisions in the NFEPA itself. *Lampman v. McCook Public Schools*, 54 F.Supp.2d 945, 946 (D.Neb.1999). If Plaintiff is proceeding on the state claim solely under the provisions of NFEPA, Plaintiff has failed to state a claim under which relief may be granted.

If Plaintiff is bringing this action under section 20–148, it is unclear whether that section permits a plaintiff to bring suit for NFEPA violations in federal court after the NEOC has dismissed the charge. Here, the NEOC dismissed Plaintiff's charge on February 18, 2000 (Ex. 21) and the complaint was filed in this court on May 16, 2000 (filing 1). Assuming that the state claims may be brought pursuant to section 20–148, the result on the merits would be the same under state law as it was for federal law. The disability discrimination provisions in the NFEPA are patterned after the ADA, and the state definitions of "disability" and "qualified individual with a disability" are defined in terms virtually identical to the definitions under the ADA. Neb.Rev.Stat. Ann. § 48–1102(9) and (10); 42 U.S.C. §§ 12102(2), 12111(8). Nebraska courts look to federal decisions when construing the NFEPA because the NFEPA is patterned after Title VII and the ADA. *See, e.g., Malone v. Eaton Corp.*, 187 F.3d 960, 962 n. 3 (8th Cir.1999) (sex discrimination under Title VII and NFEPA); *IBP, Inc. v. Sands*, 252 Neb. 573, 578–82, 563 N.W.2d 353, 357–59

(1997) (ADA and NFEPA disability discrimination); *Father Flanagan's Boys' Home v. Goerke,* 224 Neb. 731, 736, 401 N.W.2d 461, 464 (1987) (same). For the same reasons that judgment should be entered for Defendant on the ADA claims as explained in parts II(A), (B) and (C) of this opinion, judgment should be entered for Defendant on the NFEPA claim.

### III. CONCLUSION

For the reasons stated above, I find that Fritz is not protected by the ADA because she has not established that she has a "disability." Alternatively, I find that even if she has a "disability," she is still not protected by the ADA because she is not qualified to perform the essential standing function of the job.

Defendant's motion for summary judgment (filing 17) includes a request for attorneys' fees pursuant to 42 U.S.C. § 1988. Defendant did not brief this claim, and it is abandoned. NELR 39.2(c).

IT IS ORDERED that:

1. Defendant's motion for summary judgment (filing 17) is granted in part and judgment in favor of Wal–Mart will be entered by separate order; and

2. That portion of Defendant's motion seeking an award of attorneys' fees to Defendant pursuant to 42 U.S.C. § 1988 (see filing 17) is denied.