

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2002

# Buskirk v. Apollo Metals

Precedential or Non-Precedential: Precedential

Docket No. 01-3556

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Buskirk v. Apollo Metals" (2002). *2002 Decisions.* Paper 589.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/589

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed September 20, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3556

WILLARD BUSKIRK,
        Appellant

v.

APOLLO METALS; PMA INSURANCE GROUP

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-00216)
District Judge: Hon. J. Curtis Joyner

Argued June 10, 2002

Before: SLOVITER, ROTH, and McKEE, Circuit Jud ges

(Filed: September 20, 2002)

Thomas More Holland
Jeffrey Campolongo (Argued)
Law Offices of Thomas More Holland
Philadelphia, PA 19102

 Counsel for Appellant

Larry J. Rappoport (Argued)
Stevens & Lee, P.C.
Wayne, PA 19087-0236

 Counsel for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Willard Buskirk sued his employer, Apollo
Metals, claiming discrimination in violation of Title I of the
Americans with Disabilities Act (ADA), 42 U.S.C.S 12101 et
seq. (2002), and the Pennsylvania Human Relations Act
(PHRA), 43 Pa. Cons. Stat. Ann. S 951 et seq. (2002).
Buskirk also raised a common law claim of tortious
interference with contractual relations arising out of the
termination of his settlement negotiations with Apollo
Metals' workers' compensation insurance carrier, the PMA
Insurance Group.

At the conclusion of Buskirk's presentation of his case-
in-chief at trial, the District Court granted Apollo Metals'

Rule 50(a) Motion for Judgment as a Matter of Law and entered judgment for Apollo Metals on all remaining counts of Buskirk's complaint. The District Court concluded that Buskirk could not recover under his "regarded as" disabled claim because "regarded as" plaintiffs are not entitled to reasonable accommodation. The District Court alternatively found that even were Apollo Metals required to provide reasonable accommodations, it did so. Finally, the District Court concluded that Apollo Metals was in a privileged position to interfere with Buskirk's settlement negotiations with PMA.

Buskirk challenges all of the above conclusions. He also contends that the District Court abused its discretion in limiting the testimony of one of his experts and in sustaining Apollo Metals' objection to a communication between Apollo Metals' counsel and its insurance provider.

I.

BACKGROUND

A. Facts

Buskirk was hired by Apollo Metals in 1981. He held a number of positions there throughout his employment,

2

including slitter helper, polisher, finish helper, box maker, and pre-polisher.

On February 8, 1996, Buskirk injured his back when he slipped on ice and fell in Apollo Metals' parking lot on his way to work. After taking two days off to recover, Buskirk returned to work and continued to work until June 26, 1996. His back injury prevented him from returning to the position of a box maker, the job he held prior to the injury. Instead, Apollo Metals placed Buskirk in light duty positions, such as buff building, quality control, and sample cutting. Throughout that time period, Buskirk received treatment for his back injury from several doctors as well as a chiropractor.

In June 1996, Buskirk's doctors advised him to discontinue working entirely in order to rest his back and Buskirk did so until October 1996. During this leave of absence, Buskirk filed a workers' compensation claim and received partial benefits. On October 1, 1996, Buskirk returned to work at Apollo Metals in light duty positions, working less than a full forty-hour work week. In addition to the reduced hours, Apollo Metals allowed Buskirk to leave work early on occasion so that he could attend aquatic therapy sessions. Buskirk testified that he still experienced pain in the light duty jobs but that he was able to work through it. Buskirk further testified that he only once complained of his back pain to any of his supervisors, and that was in February 1996 soon after the accident when he had to leave work early due to his pain. In

response to occasional inquiries by his supervisors, he replied that he was "having a little bit of pain, but [was] putting up with it." App. at 89. Throughout this period, Buskirk continued to receive medical treatment and underwent physical therapy, a work strengthening program, and a work hardening program.

On or about May 30, 1997, Apollo Metals terminated Buskirk. In a letter to Buskirk, Apollo Metals stated:

> The reason for our decision is that you are not presently able and are not expected to be able to perform your former position, with or without reasonable accommodation[ ], since you sustained your

> injury on February 8, 1996. You have missed considerable time due to a restricted work schedule and while undergoing treatment. Since returning to work on September 30, 1996, you have been unable to perform the duties of a Box Maker. We had attempted to place you in other temporary positions which were consistent with your medical restrictions but had been periodically informed by you that even that work was too strenuous and could not be performed by you.

> Most recently you have been asked to perform [light duty work]. However, this work is not of a permanent nature and we can no longer offer that employment to you.

> We have also received and reviewed documentation from your treating physicians concerning your prognosis. Dr. Pollock advises that you "will be unable to work at his present position as a Box Maker in the foreseeable future" and Dr. Kuhns has advised that you will "not be able to resume work duties as a Box Maker due to your lower back condition." Neither has suggested any accommodation to allow you to continue to be gainfully employed.

> As we cannot accommodate you within the Box Maker position or any other vacant position and have no position that meets your limited physical capabilities, we have no choice but to discontinue your employment.

App. at 658.

Buskirk was given this termination letter at a meeting with members of Apollo Metals' management and two union representatives. Deborah Schnabel of the Human Resources Department, the author of the letter, presided over the meeting and explained that Buskirk was being terminated from Apollo Metals. Buskirk's union filed a grievance on his behalf, and as a result, Apollo Metals changed Buskirk's status so that he would no longer be considered terminated, but rather would be considered on

a leave of absence allowing him to accrue workers' compensation benefits.

On June 25, 1997, Buskirk's union presented Apollo Metals with a non-exhaustive list of six different job classifications that it claimed Buskirk was able to perform. On this same date, Buskirk received a note from Dr. Mark Kuhns stating that his lifting restrictions were being increased (to twenty pounds frequently, and to a maximum of thirty pounds occasionally) and that Buskirk could work eight hours a day, five days a week. However, Apollo Metals responded that although Buskirk's condition was improving, he still could not perform any work at Apollo Metals. Apollo Metals contends that it did not attempt to place Buskirk in another position prior to December 10, 1998, because it believed Buskirk had not received a full medical release to return to work until that date. On December 10, 1998, Buskirk's treating physician released him to work with a "permanent restriction" on lifting of forty pounds. App. at 655. After this date, Buskirk was placed in the next available position consistent with his permanent forty pound lifting restriction, that of a polisher, on February 22, 1999. He remains in this position to this day.

Buskirk's union representatives took responsibility for informing Buskirk of any vacancies at Apollo Metals and provided Apollo Metals with the results of Buskirk's medical evaluations throughout this time period. Buskirk contends that he was medically released to full work no later than March 2, 1998 when an evaluation by an independent medical examiner gave Buskirk a release to return to full-time, medium work with a weight restriction of fifty pounds -- even more generous than the December 10, 1998 medical report. However, a medical evaluation entered by Buskirk's treating physician one day later, March 3, 1998, stated that Buskirk "continues to improve but is not yet ready to return to regular work." App. at 654.

Prior to his reinstatement, Buskirk negotiated a settlement of his workers' compensation claim with PMA for $120,000, a figure that largely represents future lost earnings. After Apollo Metals reinstated Buskirk, PMA discontinued settlement negotiations and the agreement was not executed.

B. Procedural History

On January 15, 1999, shortly before his reinstatement, Buskirk filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging disability discrimination in violation of the ADA and PHRA, and tortious interference with a contract. In his complaint, Buskirk alleged that he was a qualified person with a

disability, and that Apollo Metals violated the ADA and PHRA by not accommodating his disability and by unlawfully terminating him.

Upon completion of discovery, Apollo Metals filed a motion for summary judgment. In response, Buskirk alleged that even if he did not have an actual disability (an impairment that substantially limited major life activities), he was nevertheless disabled under the ADA because Apollo Metals regarded him as disabled and/or because he had a record of impairment.

The District Court granted Apollo Metals' motion in part and denied it in part. See Buskirk v. Apollo Metals, 116 F. Supp. 2d 591 (E.D.Pa. 2000). The District Court granted the motion with respect to Buskirk's claims that were based on actual disability and record of impairment. The District Court concluded that Buskirk was not actually disabled under the statute because he had failed to prove that he was substantially limited in a major life activity by his physical impairment. Id. at 600. The District Court also concluded that Buskirk had not proven that he had a record of impairment that substantially limited a major life activity, another category of disability under the ADA. Id. However, the court denied the motion with respect to Buskirk's claim that he was "regarded as" disabled, finding that genuine issues of material fact existed to support a conclusion that Apollo Metals erroneously regarded Buskirk as disabled. Id. at 601-02. The District Court also denied the motion with respect to the tortious interference claim, concluding that Apollo Metals had introduced no evidence to support a finding of an underlying financial interest to support a privilege to interfere. Id. at 604.

A jury trial began on August 20, 2001, and two days later, Buskirk concluded the presentation of his case. At

6

that point, Apollo Metals moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). After hearing argument on the motion, the District Court granted the motion, concluding that an employer is not obligated to provide reasonable accommodations to an employee who is regarded as disabled but is not actually disabled. The District Court went a step further and found that even were Apollo Metals required to reasonably accommodate Buskirk, it did so. Finally, the District Court found that Buskirk did not present sufficient evidence from which a jury could find Apollo Metals liable for tortious interference.

Buskirk timely appealed. We have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

STANDARD OF REVIEW

We exercise plenary review over the grant or denial of a

judgment as a matter of law pursuant to Federal Rule of
Civil Procedure 50(a). Northview Motors, Inc. v. Chrysler
Motors Corp., 227 F.3d 78, 88 (3d Cir. 2000). Rule 50(a)(1)
provides:

> If during a trial by jury a party has been fully heard on
> an issue and there is no legally sufficient evidentiary
> basis for a reasonable jury to find for that party on
> that issue, the court may determine the issue against
> that party and may grant a motion for judgment as a
> matter of law against that party with respect to a claim
> or defense that cannot under the controlling law be
> maintained or defeated without a favorable finding on
> that issue.

Fed. R. Civ. P. 50(a)(1).

A district court should grant this motion only if "viewing
the evidence in the light most favorable to the nonmovant
and giving it the advantage of every fair and reasonable
inference, there is insufficient evidence from which a jury
reasonably could find liability." Lightning Lube, Inc. v. Witco
Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). "[A] directed
verdict is mandated where the facts and the law will

reasonably support only one conclusion." McDermott Int'l,
Inc. v. Wilander, 498 U.S. 337, 356 (1991). We apply the
same standard as the district court.

III.

DISCUSSION

A. ADA & PHRA

The Supreme Court recently has stated that the primary
purpose of the ADA is "to diminish or to eliminate the
stereotypical thought processes, the thoughtless actions,
and the hostile reactions that far too often bar those with
disabilities from participating fully in the Nation's life,
including the workplace." US Airways, Inc. v. Barnett, 122
S.Ct. 1516, 1522-23 (2002). In order to make out a prima
facie case of disability discrimination under the ADA and
PHRA1, a plaintiff must establish that s/he (1) has a
"disability," (2) is a "qualified individual," and (3) has
suffered an adverse employment action because of that
disability. Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d
Cir. 1998).

1. Regarded As Disabled

The ADA defines "disability," the first requirement of a
discrimination case, as,

> (A) a physical or mental impairment that substantially
> limits one or more of the major life activities of such
> individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. S 12102(2). Because Buskirk does not appeal the

_____

1. The PHRA and the ADA are "basically the same . . . in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.' " Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (alteration in original) (quoting Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996)).

8

District Court's rejection of his claim of an actual disability or record of impairment, this appeal focuses solely on the third category of disability, that of being "regarded as" having an impairment that substantially limits a major life activity.

The regulations addressing this category of disability define an individual who "is regarded as having such an impairment" as one who,

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. S 1630.2(l) (2001). Buskirk's claim is grounded in the first definition because he argues that he had a physical impairment that limited his ability to perform some work, but did not substantially limit any major life activities, and that Apollo Metals regarded that impairment as one that limited major life activities.

In order to determine whether Apollo Metals regarded Buskirk as disabled, we must consider the information Apollo Metals had regarding Buskirk's condition and its response to that information. In Olson v. General Electric Astrospace, 101 F.3d 947, 954-55 (3d Cir. 1996), we held that a reasonable factfinder could have found that the employer perceived the employee to be disabled where the evidence showed that a supervisor knew of the employee's illness and hospitalizations and that this knowledge factored into its hiring decision. "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability."

Deane v. Pocono Med. Ctr., 142 F.3d 138, 144 (3d Cir. 1998) (en banc). Further, in another "regarded as" case, we

held that the analysis "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of the persons interacting or working with him." Kelly v. Drexel Univ., 94 F.3d 102, 108-09 (3d Cir. 1996) (stating that the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled").

"[I]n general, an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999). In Taylor, we concluded that Taylor's employer regarded Taylor as disabled due to its conclusion, based on a mistaken interpretation of his medical records, that Taylor was unable to perform a wide range of jobs, not just his previous position. See id. In that case, we stated that "if an impairment at a certain level of severity would constitute a disability, then it follows that an employer who perceives an employee as having such an impairment perceives the employee as disabled." Id.; see also Sutton v. United Airlines, Inc., 527 U.S. 471, 492 (1999) (stating that a "regarded as" plaintiff is required to show that the employer regards him or her as unable to work in a broad class of jobs).

Here, Apollo Metals terminated Buskirk because it believed that Buskirk was "not presently able and not expected to be able to perform [his] former position, with or without reasonable accommodation[ ], since[he] sustained [his] injury," and that it had "no position that meets [his] limited physical capabilities." App. at 658. The company was familiar with Buskirk's injury and medical treatment and surmised that he was unable to perform any work. Several vacancies in positions other than a box maker became available after Buskirk's release from work and Apollo Metals concluded that Buskirk was unable to work in any of those positions. In a letter to the union dated July 3, 1997, Schnabel wrote that "[a]lthough[Buskirk]'s condition has shown improvement through increased lifting capacity, there still exists a concern about his ability to perform any of the job classifications. The job classifications state lifting requirements but also general physical activity." App. at 666. These perceptions support

Buskirk's contention that Apollo Metals regarded him as disabled.

Moreover, on appeal Apollo Metals no longer appears to dispute that it regarded Buskirk as disabled but instead focuses its argument on its obligations to a "regarded as" employee. Because the evidence shows that Apollo Metals

perceived Buskirk to be unable to perform any of its positions based on his medical condition, Buskirk presented sufficient evidence to satisfy the first prong of a discrimination case under the ADA and PHRA.

2. Qualified Individual

In order to pass the second prong of the test for disability discrimination, a plaintiff must prove that s/he is a "qualified individual." "Qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. S 12111(8). The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R.S1630.2(m).

Neither party disputes that Buskirk satisfied the first part of the inquiry in that he had the qualifications to perform the positions sought. Additionally, both parties agree that Buskirk could not return to his former position as a box maker and thus could not perform the essential functions of that job without reasonable accommodation. Buskirk claims that the reasonable accommodation that he requested, and to which he was entitled, was transfer upon vacancy to one of the six positions listed in the union's June 1997 letter.

The ADA provides that reasonable accommodations include, inter alia, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. S 12111(9)(B). The duty to provide a reasonable accommodation is subject to certain limitations. For example, an employer is not required to provide a reasonable accommodation if it would impose an "undue

11

hardship," 29 C.F.R. S 1630.2(p), if it would pose a "direct threat" to the safety of the employee or others, 29 C.F.R. S 1630.15(b)(2), see Chevron U.S.A. Inc. v. Echazabal, 122 S.Ct. 2045, 2049 (2002), or if to do so would conflict with seniority rules, see US Airways, Inc. v. Barnett , 122 S.Ct. 1516 (2002).

However, the courts of appeals are divided as to whether the employer is obliged to provide reasonable accommodations to a "regarded as" plaintiff, and we have not answered the question directly.2 Once again, we will

_____

2. In Deane v. Pocono Medical Center, 142 F.3d 138, 148-49 n.12 (3d Cir. 1998) (en banc), we examined, but did not decide, whether an employer is required to provide reasonable accommodations to an employee it perceives as disabled and reviewed the primary arguments on each side of the debate. On the side of requiring the provision of reasonable

accommodations, we noted that the plain language of the ADA does not differentiate between "regarded as" plaintiffs and plaintiffs who are actually disabled, id., and cited School Board of Nassau County v. Arline, 480 U.S. 273, 288-89 (1987), where the Supreme Court held that employers have an obligation to provide reasonable accommodations to employees who are regarded as disabled under the Rehabilitation Act, 29 U.S.C. S 701 et seq. In Arline, the Supreme Court stated that by protecting "regarded as" employees from discrimination under the Rehabilitation Act, Congress acknowledges that "society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment." Id. at 284. Finally, in Deane we recognized the plaintiff 's argument that "failure to mandate reasonable accommodations for 'regarded as' plaintiffs would undermine the role the ADA plays in ferreting out disability discrimination in employment." 142 F.3d at 148 n.12.

On the other side of the debate, we "acknowledge[d] the considerable force" of the argument that mandating reasonable accommodations would both permit healthy employees to demand changes in their working conditions through the threat of litigation and "create a windfall for legitimate 'regarded as' disabled employees who, after disabusing their employers of their misperceptions, would nonetheless be entitled to accommodations that their similarly situated co-workers are not, for admittedly non-disabling conditions." Id. at 149 n.12; see also Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 196 (3d Cir. 1999) (noting that "it seems odd to give an impaired but not disabled person a windfall because of her employer's erroneous perception of disability, when other impaired but not disabled people are not entitled to accommodation")

12

reserve the answer to this question for a future case because, as we explain forthwith, we conclude that Apollo Metals provided Buskirk with reasonable accommodations. Having reached this conclusion, we need not answer the difficult question of whether Apollo Metals was obligated to do so.

3. Reasonable Accommodations

Apollo Metals provided Buskirk with a series of light duty assignments, medical leaves of absence, and reduced hours from the date of his original injury in February 1996 through his termination on May 30, 1997. By May 30, 1997, Apollo Metals had provided these light duty positions and reduced hours for almost fifteen months. Although Apollo Metals initially terminated Buskirk, after negotiation of a grievance filed on behalf of Buskirk by his union, Apollo Metals eventually changed Buskirk's status to that of a leave of absence, during which period Buskirk was entitled to receive workers' compensation benefits.

The ADA does not require an employer to create a new position to accommodate an employee with a disability. See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996) (interpreting analogous section of Rehabilitation Act). Nor is an employer required to transform a temporary light duty position into a permanent position. See Mengine v. Runyon, 114 F.3d 415, 418 (3d Cir. 1997) (interpreting analogous

section of Rehabilitation Act). Buskirk does not dispute that Apollo Metals need not have created such a position, but argues that there were vacancies in less strenuous positions to which he should have been transferred after

_____

(citing Deane, 142 F.3d at 149 n.12). We did not decide the issue in either Deane or Taylor.

Thus far, the Fifth, Sixth, and Eighth Circuits have held that "regarded as" employees are not entitled to reasonable accommodations. See Weber v. Strippit, Inc. 186 F.3d 907, 916-17 (8th Cir. 1999), cert. denied, 528 U.S. 1078 (2000); Workman v. Frito-Lay, Inc., 165 F.3d 460, 467 (6th Cir. 1999); Newberry v. E. Tex. State Univ., 161 F.3d 276, 280 (5th Cir. 1998). The First Circuit has held that "regarded as" employees are entitled to reasonable accommodations. Katz v. City Metal Co., 87 F.3d 26 (1st Cir. 1996).

13

May 30, 1997, the date of the letter that stated he was being terminated.

However, prior to the medical release on December 10, 1998, Buskirk's own doctors stated that he could not return to permanent work. His treating physician, Dr. Barry Pollack, stated on September 30, 1996, that Buskirk could only perform light duty work for four hours a day and that he was limited to lifting no more than ten pounds, and reiterated these limitations on October 28, 1996. None of the doctors' notes written prior to the termination in May 1997 (changed to leave of absence) stated that he could perform full-time, permanent work.

The medical reports that were issued subsequent to the May 1997 letter were not entirely consistent in their articulation of Buskirk's limitations, but together they demonstrate that Buskirk did not receive medical leave to return to regular work before December 10, 1998. On June 25, 1997, Buskirk's chiropractor, Dr. Mark Kuhns, wrote that Buskirk's work restrictions had been lightened and that he could lift a maximum of thirty pounds occasionally, twenty pounds frequently, and could work eight hours a day, five days a week. Although this evaluation showed signs of improvement, Apollo Metals advised the union by letter on July 3, 1997: "there still exists a concern about his ability to perform any of the job classifications. The job classifications state lifting requirements but also general physical activity. Since [Buskirk] does not have a full release his status remains as worker[s'] compensation leave." App. at 666.

Buskirk argues that he was released to work on March 2, 1998 when Dr. Dane Wukich, an independent medical examiner, determined that Buskirk was "capable of returning to medium work" and was "capable of working full time with the restriction of 50 pounds." App. at 673. However, Buskirk was examined one day later by his treating physician, Dr. Pollack, who stated that Buskirk

"continues to improve but is not yet ready to return to regular work." App. at 654. Dr. Pollack did not release Buskirk to return to work until December 10, 1998, when he wrote that Buskirk was "released with a 40 lb. lifting limit. This is a permanent restriction." App. at 655. After

14

receiving this release, Apollo Metals placed Buskirk in the first vacancy that arose in one of the less strenuous positions he requested, thereby reasonably accommodating Buskirk in a position for which he was physically qualified.3 Arguably, the evidence shows that Buskirk did not meet the second prong of the EEOC's definition of a "qualified individual," but the parties have focused instead on the obligation to provide accommodation.

Nor could a reasonable jury conclude that Apollo Metals did not engage in the interactive process with Buskirk. From the date of injury until the date that Buskirk resumed working at Apollo Metals, representatives of Apollo Metals frequently communicated with Buskirk's union representative, Thomas Novack, regarding Buskirk's ability to return to work. Novack testified that he was in an "ongoing dialogue" with Apollo Metals and that Apollo Metals cooperated with him in his efforts on behalf of Buskirk. App. at 405. Apollo Metals allowed and expected Novack to bid on vacancies on behalf of Buskirk and evaluated Buskirk's ability to work in light of his medical evaluations as transmitted by Buskirk or his union representatives.

Buskirk argues that the question of whether Apollo Metals reasonably accommodated him is a question of fact that should have gone to the jury and was not appropriate for disposition on a Rule 50 motion. Generally, the question of whether a proposed accommodation is reasonable is a question of fact. See Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1101 (3d Cir. 1996). However, pursuant to Rule 50, the District Court should enter judgment as a matter of law "[i]f during a trial by jury a party has been fully heard

---

3. Although Apollo Metals does not raise this as a defense, it is of some interest that the Supreme Court recently upheld an EEOC regulation requiring that an " 'individual shall not pose a direct threat to the health or safety of the individual or others in the workplace.' " Chevron U.S.A. Inc. v. Echazabal, 122 S.Ct. 2045, 2049 (2002) (quoting 29 C.F.R. S 1630.15(b)(2)). A direct threat means a "significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodations." 29 C.F.R. S 1630.2(r) (adding that the assessment should consider the duration of the risk and the nature, severity, and likelihood of the potential harm).

15

on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that

issue." Fed. R. Civ. P. 50(a)(1). Here, viewing the evidence in the light most favorable to Buskirk, we agree with the District Court that a reasonable jury could not have found that Apollo Metals did not reasonably accommodate Buskirk. In addition, because Apollo Metals has reinstated Buskirk and no longer misperceives his medical condition, we see no need for any additional remedies. See Deane, 142 F.3d at 149 n.12 ("If it turns out that a 'regarded as' plaintiff who cannot perform the essential functions of her job is not entitled to accommodation . . ., he or she need not necessarily be without remedy. The plaintiff still might be entitled to injunctive relief against future discrimination.") (citations omitted). Thus, whether or not Apollo Metals was required to provide Buskirk with a reasonable accommodation, it did so and Buskirk's challenge under the ADA fails.

B. Tortious Interference

In addition to his claim for discrimination based on disability, Buskirk, who had been receiving workers' compensation benefits, negotiated a settlement between himself and PMA, Apollo Metals' insurance carrier, for future wage loss and future medical benefits that would have allowed him to continue to pursue his rights and remedies under the ADA and PHRA. Buskirk claims that Apollo Metals tortiously interfered with the resolution of this settlement, resulting in PMA's withdrawal of the settlement offer. The settlement would have provided Buskirk with approximately $120,000. Apollo Metals responds that it was privileged to interfere with the prospective settlement contract because it had a financial interest in the settlement and that it acted properly in protecting that interest.

When Apollo Metals originally contested this claim in its motion for summary judgment, the District Court denied the motion stating:

> Apollo has failed to cite to any evidence in the record
> that supports the finding of an underlying financial

16

> interest upon which its alleged privilege is based.
> Instead, Apollo simply states that it might have
> incurred higher insurance premiums in the future or
> might have been held responsible for the actual
> settlement. Such statements, unadorned by any factual
> support in the record, do not suffice to meet Apollo's
> burden as the moving party.

Buskirk, 116 F. Supp. 2d at 604. However, after the conclusion of Buskirk's case-in-chief, the District Court agreed with Apollo Metals and granted the Rule 50 motion on its behalf with respect to the claim of tortious interference.

In order to prevail on a claim of intentional interference

with contractual or prospective contractual relations, a plaintiff must prove:

> (1) the existence of a contractual, or prospective contractual relation between itself and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring;
>
> (3) The absence of a privilege or justification on the part of the defendant;
>
> (4) the occasioning of actual legal damage as a result of the defendants' conduct; and
>
> (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the interference of the defendant.

Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998) (citations omitted).

The only factor that Apollo Metals disputes is the absence of a privilege or justification. Apollo Metals argues that it was privileged to interfere because its insurance premiums in the future would have been higher had the settlement gone forward. Although some jurisdictions consider the presence of a privilege to be an affirmative defense that the defendant must prove, Pennsylvania places the burden on the plaintiff, as part of his or her case in chief, to prove the absence of any privilege or justification on the part of the

17

defendant. See Triffen v. Janssen, 626 A.2d 571, 574 n.3 (Pa. Super. Ct. 1993).

Pennsylvania has adopted portions of the Restatement (Second) of Torts with respect to intentional interference with contractual relations, specifically section 769, which states:

> One who, having a financial interest in the business of a third person[,] intentionally causes that person not to enter into a prospective contractual relation with another, does not interfere improperly with the other's relation if he
>
> (a) does not employ wrongful means and
>
> (b) acts to protect his interest from being prejudiced by the relation.

Schulman v. J.P. Morgan Inv. Mgmt., Inc., 35 F.3d 799, 809 (3d Cir. 1994) (emphasis and alteration in original) (quoting Restatement (Second) of Torts S 769 (1979)). The Restatement further defines "financial interest" as an

interest in the nature of an investment. A part owner of the business, as for example, a partner or stockholder, has at least an interest of this nature. A bondholder or other creditor may also have it. On the other hand, the interest of a person who looks to a third person for business and will lose business opportunities if that person enters into the business relations involved is not a financial interest under the rule stated in this Section.

Restatement (Second) of Torts S 769, cmt. a (1979).

At trial, a former claims handler for PMA, Jean Marie Keenan, presented the only testimony regarding the effect a settlement might have on a policyholder such as Apollo Metals. The question before us is whether that evidence was sufficient to support the Rule 50 motion. The relevant evidence adduced at trial summarizes as follows:

(1) PMA is the insurance company for Apollo Metals for its workers' compensation insurance.

18

(2) Apollo Metals paid the premiums to PMA with regard to the workers' compensation provided to its employees.

(3) "The calculation of the premium does include something as far as paid claims," as well as "something with regard to reserves established" for the payment of claims and incurreds (the sum of the amount paid on a claim plus the reserve amount).

App. at 571-74.

Thus this evidence shows that Apollo Metals paid the premiums for its workers' compensation insurance and that the amount of those premiums may depend in part on claims paid.

However, Keenan also testified that she did not know whether $120,000 was a sizeable claim, nor did she know how often PMA establishes its premiums:

Q. Do you know how often the amounts, the premium is established by a company like PMA?

A. I don't know.

. . . .

Q. Can you indicate whether a $120,000 claim is a sizeable claim based upon your experience?

. . . .

A. I don't believe my level of experience with settling claims would allow me to answer that.

App. at 575-76.

The comments and illustrations to Section 769 of the Restatement (Second) of Torts regarding what constitutes a financial interest list financial interests in the nature of investments, such as partners, stockholders, creditors, and parent and subsidiary relationships. In Schulman , we found the interest of a mortgage lender to fall within the scope of the privilege. 35 F.3d at 809. No case has yet addressed the privilege or absence of privilege of an insured interfering with a settlement between its insurance company and one of its employees for fear of higher premiums. Although more

19

tenuous, arguably an insured who hopes that its premiums do not rise is somewhat like a stockholder who hopes that the company in which it has invested does not lose value.

Regardless of whether or not an insured can ever have a financial interest sufficient to interfere in a settlement between its insurer and an employee, the facts presented in the District Court do not establish the presence or absence of such a financial interest here. Although Keenan testified that the payment of claims is one factor that is included in the calculation of a premium, she did not know whether or not the payment of $120,000 to Buskirk would have affected Apollo Metals' premium for its entire workers' compensation insurance policy. Keenan's testimony was not strong for either party but the burden of proof lay with Buskirk to prove the absence of any privilege or justification on the part of Apollo Metals to interfere and thus, the absence of any financial interest on the part of Apollo Metals. Although Buskirk succeeded in casting some doubt as to the existence of such an interest, we conclude that the District Court did not err in concluding that Buskirk had failed to produce evidence sufficient to demonstrate that Apollo Metals had no financial interest in this transaction.

C. Evidentiary Issues

1. Attorney Client Privilege

Buskirk argues that the District Court abused its discretion in sustaining Apollo Metals' objection to a communication between counsel for Apollo Metals and a PMA insurance adjuster on the ground of attorney-client privilege, which was relevant to the tort of interference with the contract. The challenged communication was an entry in a log made by the PMA insurance adjuster reflecting the substance of a phone call from an attorney for Apollo Metals. The entry indicates that the attorney told the PMA adjuster that Apollo Metals did not want Buskirk back and that it was "not going to offer anything on discrimination claim" because it did not think Buskirk had a good case. App. at 688. The note states that the attorney told the adjuster that she "can settle out [workers' compensation]

claim." App. at 688.

We exercise plenary review over a district court's determination on the legal issues underlying a claim of attorney-client privilege, and review the underlying facts for clear error. See United States v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991). The District Court held the communications between the adjuster and Apollo Metals' counsel to be privileged. Buskirk argues that even if we conclude an attorney-client privilege exists, Apollo Metals waived its privilege over this communication by failing to object earlier.

However, we need not answer either contention because, even if this communication was not privileged or if the privilege had been waived, the exclusion of it by the District Court was harmless error. The communication from Apollo Metals' attorney to the insurance company instructed the insurance company to proceed with the proposed settlement. Thus, this document could not have supported Buskirk's claim that Apollo Metals tortiously interfered with the proposed settlement and prevented that settlement from occurring.4

2. Expert Testimony

Buskirk contends that the District Court abused its discretion in limiting the testimony of Buskirk's expert, Jasen Walker, Ed.D., regarding Apollo Metals' perception of Buskirk as disabled. In fact, the District Court permitted Walker to testify about an employer's obligations under the ADA and whether he believed Apollo Metals regarded Buskirk as disabled. App. at 366-69. However, the District Court did not permit Walker to testify about the results of the vocational testing that Walker performed on Buskirk after Buskirk had already returned to work. The District Court refused to permit such testimony because it fell "well after the fact" and did not address the relevant time period. App. at 367.

_____

4. Because of our conclusion of harmless error, we need not decide whether there is an insured-insurer privilege under federal law. See Pearson v. Miller, 211 F.3d 57, 67 (3d Cir. 2000) (citing with approval Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("Federal courts have never recognized an insured-insurer privilege as such.")).

The District Court did not abuse its discretion in refusing to allow this testimony. We review a district court's evidentiary rulings for abuse of discretion. Abrams v. Lightolier Inc., 50 F.3d 1204, 1213 (3d Cir. 1995). Because the excluded testimony concerned Buskirk's vocational abilities during a time period that was not relevant to the

issues presented in this case, the District Court did not abuse its discretion by excluding it.

IV.

CONCLUSION

For the reasons set forth, we will affirm the District Court's grant of judgment as a matter of law on behalf of Apollo Metals.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit