# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert DuBoice,              :
            Petitioner         :
                                :
         v.                     :
                                :
Pennsylvania Human Relations    :
Commission,                    :    No. 53 C.D. 2019
            Respondent     :    Argued: December 10, 2019

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: January 23, 2020

Robert DuBoice (DuBoice) petitions for review of the December 18, 2018 final order of the Pennsylvania Human Relations Commission (Commission) dismissing his complaint against Arrowhead Lake Community Association (Employer),[1] which alleged that Employer unlawfully discriminated against him on the basis of his disability in violation of Section 5(a) of the Pennsylvania Human Relations Act (PHRA).[2] Upon review, we affirm.

---

[1] Employer intervened in this matter, and the Commission joined Employer's appellate brief. *See* Cmwlth. Ct. Order, 5/2/09; Joinder in Brief Request 6/14/19.

[2] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).

Employer hired DuBoice in October 1999 as Director of Maintenance with supervisory authority over two departments—the Roadway and Surface Water Drainage Maintenance Department and the Facilities Maintenance Department. Commission's Final Order at 2-3, Finding of Fact (F.F.) 5 & 11, Reproduced Record (R.R.) at 66a-67a.[3] Employer is a private gated community situated on three square miles and containing approximately 2,500 homes and 4,000 lots. F.F. 6-7. Employer also has approximately 49 miles of roadways, comprised of 12 paved roads and 29 dirt roads. F.F. 9.

In 2012, Employer split the duties of DuBoice's maintenance director position between two director positions, with DuBoice retaining some of these duties as Roads and Ditches Director. F.F. 12. After the maintenance director position was split, the two new directors had fewer non-physical tasks to perform. F.F. 18. DuBoice's duties as Roads and Ditches Director included maintaining roads and equipment, such as by installing speed bumps and repairing potholes; operating plow trucks, graders and a backhoe; interfacing with vendors; cutting grass; applying for permits; and interacting with homeowners about their complaints and concerns with the roads and ditches. F.F. 13 & 48. Employer expected that physical tasks would comprise 70% of DuBoice's work in this role, with non-physical tasks making up the remaining 30%. F.F. 15.

On October 14, 2013, DuBoice sustained an injury at work to his neck and right shoulder when he fell backwards while attempting to close the tailgate of a truck at a dump site. F.F. 24 & 26-27. Thereafter, it was determined that DuBoice had sustained an injury to his right shoulder and multiple cervical and thoracic

---

[3] We have added the letter "a" following citations to pages within the Reproduced Record, as per Pennsylvania Rule of Appellate Procedure 2173.

vertebrae. F.F. at 31. DuBoice did not work until he received clearance from his doctor, Dr. Edward Carey, to return on June 3, 2014. F.F. 32-33 & 37-38.

Upon his return to work, DuBoice asked to return to his position as Roads and Ditches Director, but Lonnie Howard (Howard), Employer's general manager, informed him that the position of Roads and Ditches Director had been eliminated and only a maintenance worker position was available. F.F. 22 & 39-40. Physical tasks comprised 100% of the work performed by maintenance workers. Commission's Final Order at 17, R.R at 23a. DuBoice did not express concern regarding any physical limitations at the time, as he did not know which tasks Howard would assign to him. F.F. 44. Employer assigned DuBoice and another maintenance worker the task of installing speed bumps, which required drilling a hole into the surface of the road with a hammer drill and then using a sledge hammer to drive one-inch spikes through the speed bump into the roadway. F.F. 45-46. DuBoice was also assigned tasks involving bending and heavy lifting, such as pulling tires off of trucks, removing generators and using a pick axe. F.F. 47. This work caused DuBoice's neck and shoulder to spasm. F.F. 49. DuBoice then obtained a second note from Dr. Carey indicating that he could not perform heavy physical work, which DuBoice provided to Howard on June 13, 2014. F.F. 50-51. Howard informed DuBoice that the maintenance worker position was the only work available. F.F. 53. DuBoice left his job because he was unable to perform the physical work assigned to him. F.F. 55.

DuBoice filed a complaint with the Commission on or about December 16, 2014. Joint Stipulation of Facts at 1, No. 3, R.R. at 806a. DuBoice then filed an amended complaint on or about March 26, 2015, alleging that Employer unlawfully discriminated against him in violation of Section 5(a) of the PHRA, 43 P.S. § 955(a),

3

by failing to engage in the interactive process regarding his request for a reasonable accommodation, resulting in his constructive discharge. Amended Complaint at 2-5, R.R. at 716a-19a. On May 20, 2016, the Commission approved a finding of "probable cause" and scheduled mandatory conciliation. Joint Stipulation of Facts at 1, No. 7, R.R. at 806a.

On July 13, 2016, the parties' attempt at conciliation proved unsuccessful and the matter was approved for public hearing on March 29, 2017. Joint Stipulation of Facts at 1, Nos. 8-9, R.R. at 806a. The parties voluntarily agreed to participate in mediation with the Commission's permanent hearing examiner, Carl Summerson (Summerson), serving as mediator. Mediation and Confidentiality Agreement (Agreement) at 1-4, R.R. at 740a-43a. Prior to mediation, DuBoice had signed the Commission's mediation and confidentiality agreement, which provided, in relevant part, as follows:

> Currently, the [Commission] has only one Permanent Hearing Examiner. If mediation fails to reach a settlement, Hearing Examiner Summerson will continue to have direct involvement in this case. The parties are advised that should the scheduled Public Hearing be held in this case, Hearing Examiner Summerson may act as the Hearing Examiner or Panel Advisor to a three member panel of . . . Commissioners.

Agreement at 2, R.R. at 741a. The parties failed to resolve their dispute through mediation, and a public hearing was held on April 18, 2018. Certified Record, Joint Stipulation of Facts at 2, No. 10; Hearing Transcript (H.T.), 4/18/18 at 1, R.R. at 90a; Agreement at 2, R.R. at 741a.

On December 4, 2018, Hearing Examiner Summerson issued his recommendation to dismiss DuBoice's complaint, which the Commission adopted

4

on December 18, 2018.  Commission's Final Order at 23-24, R.R. at 87a-88a.  The Commission found that DuBoice failed to establish a *prima facie* case of disability discrimination because he was unable to demonstrate that he was a "qualified individual."  *See* Commission's Final Order at 16-17 & 21, R.R. at 80a-81a & 85a.  The Commission determined that DuBoice was unable to establish that he was qualified to perform the essential functions of his job, because he "did not show a reasonable accommodation would have allowed him to perform the physical duties of his position."  Commission's Final Order at 9, Conclusion of Law (C.L.) 8, R.R. at 73a; Commission Final Order at 20, R.R. at 84a.  Thus, the Commission found that DuBoice "failed to prove he was discriminatorily denied an accommodation, in violation of Section 5(a) of the PHRA[.]"  Commission Final Order at 23-25, R.R. at 87a-89a.  DuBoice then petitioned this Court for review.

In the statement of questions involved in his appellate brief, DuBoice presents two questions for this Court's consideration:

> [1.] Whether the . . . Commission erred in determining [] DuBoice was not a qualified individual.

> [2.] Whether [DuBoice's] due process rights were violated because the hearing examiner acted as mediator prior to the close of discovery having private conversations with the opposing side.

DuBoice's Brief at 4.[4]

---

[4] Our review of an order of the Commission is limited to determining whether constitutional rights have been violated, an error of law has been committed or findings of fact are supported by substantial evidence.  *Doral II Condo. Ass'n v. Pa. Human Relations Comm'n*, 779 A.2d 605, 607 n.3 (Pa. Cmwlth. 2001), *aff'd*, 810 A.2d 634 (Pa. 2002); *see also* Section 704 of Administrative Agency Law, 2 Pa. C.S. § 704.

### I. Whether DuBoice was a qualified individual.

Regarding this first question, DuBoice argues that the Commission erred in determining he was not a qualified individual for purposes of his disability discrimination claim and, therefore, requests that this Court reverse and remand the matter. *See* DuBoice's Brief at 24 & 30. DuBoice asserts that he met his burden of demonstrating he was capable of performing his pre-injury position of Roads and Ditches Director, which included operating heavy equipment, such as plow trucks, graders and backhoes, and that the hearing examiner erred in considering only the heavy duties of the post-injury maintenance worker position. *Id.* at 26-27 (citing H.T., 4/18/18 at 21, R.R. at 110a). DuBoice maintains that the responsibilities of the pre-injury position of Roads and Ditches Director are different than the physical requirements of his post-injury maintenance worker position, which required him to use a sledge hammer on 150 to 200 spikes to install speed bumps; pull tires from trucks; and lift heavy equipment, such as generators. *Id.* at 27 (citing H.T., 4/18/18 at 32-33, R.R. at 121a-22a). DuBoice asserts that the Commission erred in determining he would accept nothing less than the non-physical components of the pre-injury Roads and Ditches Director position, and that a reasonable accommodation would have enabled him to perform "some of the less physically demanding but still physical components of the [r]oads and [d]itch[es] [d]irector position." *Id.* at 29-30. DuBoice further maintains that he was physically capable of performing the managerial aspects of his pre-injury position of Roads and Ditches Director. *Id.* at 29 (citing H.T. at 34, R.R. at 123a). DuBoice contends that Employer subverted its obligation to provide a reasonable accommodation by eliminating his pre-injury position and assigning him to a job with different essential

6

duties upon his return. *Id.* at 26. Further, DuBoice contends he "did request a reasonable accommodation from [Employer]," because he presented Employer with the note from Dr. Carey and communicated his desire to resume his previous position. *Id.* at 28 & 30 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999)).

Employer counters that the Commission did not err in determining that DuBoice was not qualified for his position and, therefore, failed to establish a *prima facie* case of disability discrimination, because DuBoice could not perform the physical tasks which constituted essential functions of his job, either with or without reasonable accommodation. *See* Employer's Brief at 17 & 19-20. Employer asserts that DuBoice "mistakenly believes that he could restructure his job and pick and choose the essential functions of the job he was willing to perform." *Id.* at 18. Employer maintains that DuBoice failed to identify a reasonable accommodation to help him perform the essential functions of his job, instead demanding a new position due to "his inability to perform the physical components of any other job." *Id.* at 17 & 20 (citing *Cullison v. Dauphin County* (M.D. Pa., No. 1:10-CV-00705, filed May 18, 2012), slip op. at __, 2012 WL 3027776, at *56.

In the absence of direct evidence, a claim of disability discrimination under the PHRA may be analyzed under the three-part, burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[5] *Canal*

---

[5] "It is now axiomatic that the familiar analytical framework first pronounced in *McDonnell Douglas* . . . for resolution of suits brought under Title VII [of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17] also guides an analysis of claims brought under the [Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213]." *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). "[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010); *see also Imler v. Hollidaysburg Am. Legion Ambulance Serv.*, 731 A.2d 169, 173 (Pa. Super. 1999) (noting that "[t]he PHRA and ADA are interpreted in a co-

*Side Care Manor, LLC v. Pa. Human Relations Comm'n*, 30 A.3d 568, 570 & 573 (Pa. Cmwlth. 2011). Under this framework, a complainant bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *Id.* at 573 n.7 (citing *McDonnell Douglas*). Once a *prima facie* case is presented, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden then shifts back to the complainant to prove by a preponderance of the evidence that the articulated reason was merely pretext for discrimination. *Id.* However, "[t]hough the burden of production shifts between the parties, 'the . . . plaintiff at all times bears the ultimate burden of persuasion.'" *Sorgini v. Wissahickon Sch. Dist.*, 274 F. Supp. 3d 291, 296 (E.D. Pa. 2017) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, (1993) (internal quotation marks omitted)).

A complainant establishes a *prima facie* case of disability discrimination under the PHRA by demonstrating: "(1) that he or she is a disabled person within the meaning of the [PHRA];[6] (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination." *Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 811 (Pa. Cmwlth. 2003). At issue here is the second element. The burden is on the complainant to prove that he is an

---

extensive manner[,] . . . because the PHRA and ADA deal with similar subject matter and are grounded on similar legislative goals").

[6] The parties do not dispute that DuBoice has a disability, thereby satisfying the first element of a *prima facie* case of disability discrimination. *See* Commission's Final Order at 15-16, R.R. at 79a-80a.

otherwise qualified individual by means of a two-part test. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). A court must consider "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. pt. 1630.2(n)). "The purpose of the second step is to ensure that individuals with disabilities who can perform the essential functions of the position held or desired are not denied employment opportunities because they are not able to perform marginal functions of the position." *Lombardo v. Air Prod. & Chemicals, Inc.* (E.D. Pa, No. CIVA 05-1120, filed July 7, 2006), slip op. at 19, 2006 WL 1892677, at *10 (quoting 29 C.F.R. pt. 1630, App. at 368).

The Commission did not err in determining that DuBoice failed to establish a *prima facie* case of disability discrimination, as he was unable to demonstrate that he was an otherwise qualified individual. The Commission found, and the parties do not dispute, that DuBoice has the requisite skill, experience and other job-related requirements of the position sought, thereby satisfying the first part of the two-part test. *See* Commission's Final Order at 17, R.R. at 81a. However, DuBoice fails to meet the second requirement because he is unable to establish he could perform essential job functions[7] with or without reasonable accommodation.

---

[7] "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). This term "does not include the marginal functions of the position." *Id.* "A job function may be considered essential . . . because of the limited number of employees available among whom the performance of that job function can be distributed." 29 C.F.R. § 1630.2(n)(2)(ii). "Evidence of whether a particular function is essential includes, but is not limited to . . . [t]he amount of time spent on the job performing the function[.]" 29 C.F.R. § 1630.2(n)(3)(iii).

9

The note DuBoice submitted indicated that he could not do heavy physical work. F.F. 50. The Commission determined that "[p]erforming physical tasks is an essential function of both the [d]irector position DuBoi[c]e previously held and the position to which DuBoi[c]e was assigned upon his return to work on June 3, 2014." C.L. 14. The Commission noted that DuBoice admitted he was unable to perform *any* of the physical aspects of his post-injury job as a maintenance worker, whether essential or marginal. Commission's Final Order at 17-18; R.R. at 81a-82a. The Commission pointed out that DuBoice was unable to assist in the installation of speed bumps, use a pick axe, pull tires or remove generators—all of which were tasks assigned to maintenance workers. Commission's Final Order at 18, R.R. at 82a. The Commission specifically found that these tasks were essential functions of the maintenance worker position. *Id.*

The question, then, is whether DuBoice could have performed the physical tasks constituting essential job functions of the maintenance worker position with reasonable accommodation. If an accommodation is needed, the complainant bears the burden of demonstrating that a reasonable and effective accommodation exists that would render him otherwise qualified. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 670 (3d Cir. 1999). A complainant may demonstrate he is an otherwise qualified individual "if he can make at least a facial showing that his proposed accommodation is possible." *Gaul*, 124 F.3d at 580. "More specifically, [he] must demonstrate that there [was a] vacant, funded position[] whose [sic] essential duties he was capable of performing, with or without reasonable accommodation, and that [the] position[] [was] at an equivalent level or position as [his former job]." *Id.* at 580 (emphasis added) (internal citation and quotation marks omitted). Here, no such position existed.

10

While the Commission determined that DuBoice "uncompromisingly insist[ed] on the single accommodation of assigning him only managerial[,] non-physical tasks[,]" C.L. 17, and found that DuBoice would have only accepted as an accommodation being assigned to the 30% non-physical component of his prior, now eliminated, position as Roads and Ditches Director, Commission's Final Order at 19, R.R. at 83a, we note the relevant inquiry is whether DuBoice could perform the essential functions of the post-injury maintenance worker position with reasonable accommodation. *See Gaul*, 124 F.3d at 580. The director position previously held by DuBoice was eliminated prior to DuBoice's return to work. Nevertheless, the Commission determined that DuBoice's June 13, 2014 request was the equivalent of a "request that [Employer] remove an essential function of *either* the [d]irector's position or the position o[f] maintenance worker to which DuBoi[c]e was assigned" following his work injury. C.L. 12 (emphasis added). Thus, the Commission determined that DuBoice essentially asked Employer to create an entirely new position to accommodate his disability. Commission Final Order at 19, R.R. at 83a (citing *Buskirk v. Apollo Metals*, 307 F.3d 160 (3d Cir. 2002)). However, "[t]he [Americans with Disabilities Act (ADA)] does not require an employer to create a new position in order to accommodate an employee with a disability[.]" *Turner*, 440 F.3d at 614 (citing *Buskirk*, 307 F.3d at 169). Such an accommodation is, therefore, unreasonable as a matter of law. *See Gaul*, 124 F.3d at 581 (finding complainant failed to establish he was an otherwise qualified individual where "his proposed accommodation was unreasonable as a matter of law").

Further, the Commission noted that when DuBoice returned to work on June 3, 2014, only he and one other maintenance worker were the individuals to whom maintenance work could be assigned. Commission's Final Order at 18, R.R.

11

at 82a. While DuBoice asserts he is capable of operating equipment, such as plow trucks, graders and backhoes, *see* DuBoice's Brief at 29, these are physical tasks associated with his pre-injury position. *See* F.F. 13. DuBoice's purported ability to perform some of the physical tasks of his pre-injury position has no bearing on his ability to perform the physical tasks of the post-injury maintenance worker position and would still require the reassignment of all physical tasks of the maintenance worker position to his sole co-worker following DuBoice's return to work. *See* F.F. 13 & 48.

The United States District Court for the Eastern District of Pennsylvania has held as follows:

> Though the ADA defines the term reasonable accommodation to include "job restructuring," . . . [Equal Employment Opportunity Commission] regulations interpreting the ADA state that reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The regulations state that "an employer or other covered entity is not required to reallocate essential functions" as a reasonable accommodation. 29 C.F.R. Pt. 1630[,] App. 1630.2(o). Thus, a reasonable accommodation is a change that helps a disabled individual perform the essential functions of the job, not a modification that reinvents the position.
>
> The Third Circuit has stated that "employers are not required to modify the essential functions of a job in order to accommodate an employee." *Donahue v. CONRAIL,* 224 F.3d 226, 232 (3d Cir. 2000) . . . . "A request to be exempted from an essential duty" is "not an

12

accommodation designed to help [a disabled individual] perform" the job. *Id.*

*Lombardo*, slip op. at **, 2006 WL 1892677, at *22-23 (citation omitted) (holding that employee's request that employer eliminate or reassign physical tasks to other employees was not a reasonable accommodation, such that he was not a "qualified individual within the meaning of the ADA"). Further, "[w]here plaintiffs have sought to *lessen their physical duties* as a reasonable accomodation [sic] for their disability, the courts have not required employers to accomodate [sic] their requests where the physical duties were essential to the position." *Lombardo*, slip op. at 23, 2006 WL 1892677, at *12 (citation omitted) (emphasis added). Reallocating essential job functions involving physical tasks[8] to DuBoice's sole co-worker would therefore constitute an unreasonable accommodation as a matter of law. *See Gaul*, 124 F.3d at 581. Thus, the Commission did not err in concluding that DuBoice failed to satisfy his burden of demonstrating that a reasonable and effective accommodation exists that would render him otherwise qualified for purposes of establishing a *prima facie* case of disability discrimination. *See Walton*, 168 F.3d at 670.

**II. Whether DuBoice's due process rights were violated because the hearing examiner acted as mediator prior to the close of discovery and had private conversations with the opposing side.**

---

[8] The Commission noted that "[d]uring the hearing no attempt was made to break the precise tasks of the positions into those that are essential functions and those that were marginal functions." Commission's Final Order at 17, R.R. at 81a. Thus, some of the physical tasks associated with the maintenance worker position may constitute only marginal job functions. However, this does not hinder our analysis because the Commission found that DuBoice could not perform *any* of the physical functions required by either his pre- or post-injury position, whether essential or marginal. *See* Commission's Final Order at 17-18, R.R. at 81a-82a.

Regarding the second question presented, DuBoice contends that he was prejudiced because the hearing examiner had also acted as mediator. DuBoice's Brief at 30-33. DuBoice asserts that the hearing examiner improperly commingled the roles of prosecutor and adjudicator. DuBoice's Brief at 31 (citing *Pa. Human Relations Comm'n v. Thorp, Reed & Armstrong*, 361 A.2d 497 (Pa. Cmwlth. 1976)). DuBoice contends that "[w]hile the hearing examiner did not serve in prosecutorial and adjudicative functions, the hearing examiner's role of mediator placed him in conversations with [] Employer . . . to which [DuBoice's] attorney was not privy." *Id.* at 32. DuBoice also points out that during mediation, the hearing examiner recommended that he accept Employer's offer. *Id.* DuBoice also asserts that at mediation, after he refused the hearing examiner's settlement recommendation and "after the hearing examiner's private discussions with Employer's counsel, the hearing examiner returned with his coat on and his file under his arm, abruptly ending settlement discussions." *Id.* at 33. Thus, DuBoice maintains the hearing examiner "fail[ed] to maintain the appearance of impartiality, such that his due process rights have been violated," necessitating this Court to vacate the decision and remand for a new hearing. *Id.*

Employer contends that DuBoice's assertion that the Commission somehow prejudiced him and violated his due process rights by facilitating mediation between the parties in advance of the public hearing lacks merit. *See* Employer's Brief at 22. Employer points out that the parties knowingly agreed to participate in mediation facilitated by Hearing Examiner Summerson with the understanding that Summerson would then later serve as the public hearing examiner if mediation proved unsuccessful. *Id.* at 22-23. Employer also notes that the Commission required the parties to execute a mediation agreement, which indicated

that because "the [Commission] ha[d] only one Permanent Hearing Examiner[,] . . . [i]f mediation fail[ed] to reach a settlement, Hearing Examiner Summerson [would] continue to have direct involvement in the case" and "may act as Hearing Examiner or Panel Advisor to a three member panel of . . . Commissioners." *Id.* (quoting Agreement at 2, R.R. at 741a).

We conclude that DuBoice's claims of prejudice and lack of due process are meritless. As noted by Employer, DuBoice voluntarily entered into mediation and signed an agreement which clearly informed him that Summerson, the mediator, would also serve as hearing examiner should the attempted mediation fail. *See* Agreement at 2, R.R. at 741a. Further, though DuBoice does not specifically argue that Hearing Examiner Summerson should have recused himself, he contends that Summerson improperly served as both mediator and hearing examiner. Thus, DuBoice is essentially asserting that Summerson should have recused himself from serving as hearing examiner.

DuBoice was aware that Summerson would serve as both mediator and hearing examiner at least as early as June 16, 2017, the date he signed the mediation and confidentiality agreement. *See* Agreement at 4, R.R. at 743a. The parties unsuccessfully attempted to resolve their dispute through mediation and a public hearing was conducted on April 18, 2018. H.T., 4/18/18 at 1, R.R. at 90a; Agreement at 2, R.R. at 741a. However, DuBoice first asserted in his petition for review, filed with this Court on January 16, 2019, that Summerson's participation in both mediation and the public hearing prejudiced him. Petition for Review at 1, R.R. at 44a. Thus, this argument is waived. *See Lomas v. Kravitz*, 170 A.3d 380, 390 (Pa. 2017) (stating, "the law is clear" that a party must seek recusal of a jurist at the earliest possible moment, *i.e.*, when the party knows of the facts that form the basis

15

for a motion to recuse;" otherwise, "the party's recusal issue is time-barred and waived"); *see also League of Women Voters of Pa. v. Commonwealth*, 179 A.3d 1080, 1086 (Pa. 2018) (noting that "[t]he timeliness of [a recusal] application is particularly troubling where a party seeks disqualification only after receiving an adverse judgment").

Accordingly, we affirm.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert DuBoice,                          :
                    Petitioner          :
                                        :
            v.                          :
                                        :
Pennsylvania Human Relations            :
Commission,                             :   No. 53 C.D. 2019
                    Respondent          :


O R D E R


AND NOW, this 23rd day of January, 2020, the December 18, 2018 final order of the Pennsylvania Human Relations Commission is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge